J. M. DOUGLAS, et al., *Appellants,* v. F. W. WEBBER, et al., *Appellees.*

En Banc.

Opinion filed April 8, 1930.

Petition for rehearing denied May 16, 1930.

756

*Martin & Hocker, D. Neil Ferguson,* and *Anderson & Anderson,* for Appellant;

*Hampton & Greene,* for Appellee.

WHITFIELD, P. J.—The appeal herein is from the following decree of the Circuit Court:

"Heretofore this Court entered an order awarding a temporary injunction restraining the holding of the election as called by the Board of County Commissioners under and pursuant to the terms of Chapter 14217. Thereafter, F. W. Ditto and certain other citizens undertook to intervene, and were permitted to file an answer in this cause, and they having filed an answer and demurrer, the complainants moved to strike the same upon several grounds, and upon consideration thereof by the order and decree of this Court of date September 20th, 1929, the said answer was stricken, and the said demurrer was overruled and denied. And the complainants by their counsel, and defendants, Board of County Commissioners and the Clerk, by their counsel, having agreed that the decision of this Court granting a temporary injunction, and later striking the answer of the interveners and denying the motion to dissolve the injunction, amounts to a final termination of the cause, and that there is no matter of fact involved in it which makes it necessary to have a reference, and that the Court shall proceed to enter final decree upon the bill and answer, and the parties now being present in Court,

· and the matter having been submitted on bill and answer,—

"It is therefore Ordered, Adjudged and Decreed:

"1. That the equities of this cause are with the complainants, and that the Act of the Legislature aforesaid is unconstitutional and void.

"2. That the defendants be and they are perpetually restrained and enjoined from holding the election under and pursuant to the terms of the Act of the Legislature aforesaid.

"3. That the Act of the Legislature aforesaid being unconstitutional and void, the Board of County Commissioners and the Clerk of the Court aforesaid, are directed and required to advertise and sell the bonds remaining unsold, as in their judgment is proper, and at such time as they find proper, to sell the same when a suitable market therefor can be had as if the Act of the Legislature aforesaid had not been passed."

The question to be determined is whether the evidence that the due publication of the required notice of the proposed local law was "established in the legislature" in the manner specifically prescribed by the constitution.

The courts have no substantive power to nullify duly authenticated legislative enactments. But in justiciable cases courts of competent jurisdiction may adjudicate that in the process of its enactment or in its provisions or in its effect or operation, a legislative enactment is in conflict with some express or implied provision of the State Constitution or with the dominant Federal authority within its sphere, and that as a consequence the enactment is inoperative either in whole or in part or as applied to the particular case. The constitution requires each House of the Legislature to keep a journal of its proceedings, and also mandatorily requires that in stated legislative pro-

ceedings designated action shall be taken and that particular matters shall be entered upon the journal. This authorizes the courts in appropriate litigated cases to examine the legisiative journals and to determine therefrom whether, in the enactment of a duly challenged statute, the constitution was complied with as to the matters required by the Constitution to be entered upon the journals. If in a justiciable case it be duly shown by the journal of either house of the Legislature that a bill was not read as required by the Constitution, or that the vote on final passage was not taken by yeas and nays and entered on the journal, or that a quorum was not present or that a majority of the members present (at least a quorum being present) did not vote for the passage of a bill, or that two-thirds of the members present (a majority of all the members being present) did not pass a bill vetoed by the Governor, or that two-thirds of the members elected to each House did not vote for the passage of the classes of bills referred to in Sec. 11, Article XVI, or that the requirements as to giving notice of proposed or special laws were *not* complied with, or could not have been complied with as in Horton v. Kyle, 81 Fla. 274, 88 So. R. 757, or that the bill authenticated as a law is not the bill that was passed, State ex rel. Boyd v. Deal, 24 Fla. 293, 4 So. R. 899; Gwynn v. Hardee, 92 Fla. 543, 110 So. R. 343; or was passed without an enacting clause, In Re. Advisory Opinion to Governor, 43 Fla. 305, 31 So. R. 348, and perhaps in other instances, the courts may examine the journals or other duly authorized and controlling records to determine therefrom whether the affirmative requirements of the Constitution as prerequisites to the introduction of a legislative bill or as to essential steps to be taken by the legislature in enacting a law, were duly complied with; and if not complied

with to so adjudicate, whereupon an enactment duly
adjudged to have been not duly introduced or not duly
passed, or to violate superior law, will be inoperative by
the vital force of the Constitution.

When an enactment, though duly introduced and passed,
contains provisions that violate paramount law, as by
containing subjects forbidden by the Constitution, Secs.
16 and 30, Article III, In Re Executive Communication
Relative to Appropriation Bill, 14 Fla. 283, 285, or by
containing provisions that violate or conflict with the
Constitution or with dominant Federal authority, the
courts may in proper cases adjudicate such conflict with
the paramount law, and the enactment will be inoperative
to the extent of the conflict, whether it be the whole
or a severable part of the enactment or only as the enact-
ment is applied to the case being litigated, for a statute
may be valid in part or may be validly applied in one case
and not in a case of a different nature or consequence.

Article II of the Constitution provides:

"The powers of the government of the State of
Florida, shall be divided into three departments;
Legislative, Executive and Judicial; and no person
properly belonging to one of the departments shall
exercise any powers appertaining to either of the
others, except in cases expressly provided for by this
Constitution."

The judicial department is not given a substantive
power to review and to approve or disapprove a decision
of the legislative department that it may exercise a par-
ticular governmental power or that such power may be
exercised in a particular manner; but in adjudicating
rights in a justiciable case a court of competent juris-
diction may determine, in so far as the rights being

adjudicated are involved, whether a power that has been exercised by the legislative department as it affects the particular case, properly appertained to that department or whether the power if properly appertaining to the department was exerted in the manner required by the Constitution, when the matter may be determined by reference to the State Constitution or to the dominant Federal law if applicable, or when the matter may be determined by reference to a record provided for or contemplated by the Constitution for that purpose imports verity and is identified or designated by the Constitution or under constitutional authority and that is of equal or superior legal force to the action that is challenged. See Ewing v. Trenton, 57 N. J. L. 318.

The organic provision that when a bill is enacted in the manner prescribed and is signed by the Governor or passed over his objections in the manner prescribed, "it shall become a law," contemplates an enactment in the manner commanded and within the limitations fixed by the Constitution, and that the provisions of the enactment shall not in terms or in its application violate any provision of fundamental law. When a statute is duly authenticated its due enactment is assumed by the courts whose province it is to interpret and apply the statute, if its provisions accord with controlling organic law. The courts have no power to review the proceedings of the Legislature in enacting a statute, for the purpose of determining its due enactment, unless the Constitution shows an intent that the courts shall exercise such power in litigated cases, as by making the validity of the enactment depend upon defined facts that are required to be evidenced by a record or file that is expressly designated by the Constitution or under its authority and importing verity as it affects the validity of a duly authenticated statutory enactment.

Original Section 21, Article III; Constitution of 1885, provides that:

 "No local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or the thing to be effected may be situated, which notice shall state the substance of the contemplating law, and shall be published at least sixty days prior to the introduction, into the Legislature of such bill, and in the manner to be provided by law. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed."

Chapter 3708, Acts of 1887, Sections 94-5, Comp. Gen. Laws, 1927, provided for publishing and for proof by affidavit of the publication of notices of proposed local or special laws, and required the notice to "contain a short statement of the object desired by said special or local legislation." The statute did not require the affidavit of proof of publication to be entered upon the legislative journal or to be filed or recorded or preserved; and the requirement of Section 21, Article IV, that the Secretary of State "shall keep the records of official acts of the Legislature," and the provision of Chapter 1904, Acts 1872, Section 116, Comp. Gen. Laws 1927, that "all original acts and resolutions passed by the Legislature and all other original papers acted upon thereby together with the journals" shall be preserved in the office of the Secretary of State, did not require the proof of publication of notice to be entered upon the journal and did not identify or designate the record or file in which the proof of publication of notice of proposed local or special laws, should be made or kept so that the matter would not be at large and the courts could refer to the record pointed out

by the Constitution or by a statute under constitutional authority, therefore the courts were not authorized to enquire whether such proof of publication of notice was "established in the legislature" as required by the Constitution, the command being addressed to the Legislature and no definite specific record was required by the Constitution or under constitutional authority to be made of such proof of publication, so that in justiciable cases the courts could upon an inspection of such identified record importing verity, determine whether the requirements of the Constitution were complied with. See Stockton v. Powell, 29 Fla. 1, text 58, 10 So. R. 688; Rushton v. State, 58 Fla. 94, 50 So. R. 486; Vann v. State, 65 Fla. 160, 61 So. R. 323; State ex rel. Buford v. Fearnside, 87 Fla. 349, 100 So. R. 256; Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. R. 771; Whitney v. Hillsborough County decided at this term.

Section 21, Article III, as amended in 1928, House Joint Resolution No. 3, page 1597, Acts 1927, requires publication of notice of proposed special or local legislation and provides that:

"The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed by having affidavit of proof of publication attached to the proposed bill when the same is introduced in either branch of the Legislature, and which such affidavit constituting proof of publication shall be entered in full upon the journals of the Senate and of the House of Representatives, which entries shall immediately follow the journal entry showing the introduction of the bill."

Chapter 13791 prescribes the method of publication and of proof of publication of notice of proposed local or

special legislation under the amended organic section and provides that the

"affidavit of proof of publication shall be attched to the contemplated law when it is introduced into the Legislature, and shall be entered in full upon the Journals of the House and Senate, as the case may be, immediately following the entry in the Journal showing the introduction of the bill. A true copy of the notice published or posted shall also be attached to the bill when introduced, but it shall not be necessary to enter the same in the Journal, but same together with affidavit of proof of publication shall accompany the bill through the Legislature and be preserved as a part thereof in the office of the Secretary of State."

In this case the journal entries as to the introduction of the local bill and of the affidavit of proof of publication and the determination of the Senate thereon are as follows:

"By Senator Gary—
"Senate Bill No. 636:
"A bill to be entitled an Act relating to the authority of the Board of County Commissioners of Marion County, Florida, to issue and sell the unsold portion of the four million five hundred and fifty thousand dollars ($4,550,000.00) of authorized County of Marion Highway Bonds; providing for the cancellation and abrogation of the authority of said Board of County Commissioners to issue and sell one-half of the one million dollars ($1,000,000.00) unissued and unsold portion of said bonds; providing for the submission to the qualified electors, who are freeholders in said Marion County, Florida, of the question of whether or

not the authority of the Board of County Commissioners of Marion County, Florida, to issue and sell the other one-half of the unsold portion of said bonds, shall be abrogated and rescinded; and providing for a special election to be held, to determine such election and prescribe the effect thereof.

"Which bill was read the first time by its title, and had attached to same when introduced in the Senate the following proof of publication which was ordered to be entered in full upon the Journal of the Senate:

"AFFIDAVIT OF PROOF OF PUBLICATION

"State of Florida,
"County of Marion.

"Before the undersigned authority personally appeared H. D. Leavengood, who on oath does solemnly swear (or affirm) that he has knowledge of the matters stated herein; that a notice stating the substance of a contemplated law or proposed bill relating to the authority of the Board of County Commissioners of Marion County, Florida, to issue and sell the unsold portion of the four million five hundred and fifty thousand dollars of authorized County of Marion Highway Bonds, has been published at least thirty days prior to this date, by being printed in the issue of April 16, 1929, of the Ocala Evening Star, a newspaper or newspapers published in Marion County, Florida; that a copy of the notice that has been published as aforesaid and also this affidavit of proof of publication are attached to the proposed bill or contemplated law, and such copy of the notice so attached is by reference made a part of this affidavit.

" (Signed) H. D. LEAVENGOOD.

"Sworn to and subscribed before me this 16th day of April, 1929.

"(SEAL)

"(Signed) MRS. J. H. GOOD,

"Notary Public, State of Florida.

"My Commission Expires February 15, 1930.

"And the Senate thereupon determined that the evidence that said bill has been published in compliance with Section 21 of Article III of the Constitution has been established in this Legislature."

The affidavit of proof of publication of notice as entered on the Senate journal immediately following the journal entry as to the introduction of the local bill, states that "a notice stating the substance of a contemplated law or proposed bill relating to the authority * to issue and sell the unsold portion of the four million five. hundred and fifty thousand dollars of authorized County of Marion Highway Bonds, has been published at least thirty days * ; that a copy of the notice *, attached to the proposed bill or contemplated law * is *by reference* made a part of this affidavit." The copy of the notice attached to the bill is as follows:

### "NOTICE OF SPECIAL LEGISLATION

"Notice is hereby given to the citizens of Marion County, Florida, that the Legislature of the State of Florida, at its 1929 session, will be requested to enact a law requiring the Board of County Commissioners of Marion County, Florida, to refrain from offering for sale one million dollars par value of Marion County Road Bonds remaining unsold and undelivered of the $4,500,000 issue of Road Bonds of said county voted in the year 1925 upon the ratification of such law by

a majority of the qualified freeholders of said county, to be ascertained in an election to be called and submitted as shall be provided in said law, and upon the ratification of such law as aforesaid, that said Board of County Commissioners shall take appropriate legal action to rescind and abrogate said bonds.

"Marion County Taxpayers League.
"By J. E. Baxter, President."

The title of the local bill as introduced, substantially states the subject of the local law as enacted, and the "affidavit of proof of publication" entered on the Senate Journal "states the substance of the contemplated law," in that the affidavit proves the publication of a notice of a contemplated law or proposed bill "relating to the authority of the Board * * * to issue and sell the unsold portion of the * * * bonds," and the bill as passed "relates to the authority of the Board * * * to issue and sell the unsold portion of the * * * bonds." The bill as enacted contains provisions for the cancellation and abrogation of authority to issue and sell one half of the unsold portion of the bonds and for submission to electors of the county the question whether authority of the board to issue and sell the other one half of the unsold portion of the bonds shall be abrogated and rescinded; but such latter provisions so contained in the bill are matters properly connected with and "relate to the authority of the board * * * to issue and sell the unsold portion of the * * * bonds," therefore the "affidavit of proof of publication" sufficiently evidences the due publication of a notice stating "the substance of the contemplated law," as required by the Constitution.

The above quoted copy of the notice published that is "attached to the bill" and "preserved as a part thereof" as required by the statute, contains notice of a request

to enact a law requiring the board to refrain from offering for sale the remaining unsold bonds, upon the ratification of such law at an election to be called for that purpose. The contents of such copy of the notice are not so materially at variance from the affidavit of proof of publication of notice that is ''entered in full upon the journal'' of the Senate, as to have been misleading to the public of the county affected by the local law; and even if such copy of the notice attached to the bill and preserved as a part thereof, does not in effect ''state the substance of the contemplated law'' precisely as it is stated in the ''affidavit of proof of publication'' that is duly entered on the journal, such copy of notice so attached to the bill relates to the subject of the local bill and does not render ineffectual the determination of the Senate entered on its journal ''that the evidence that said bill has been published in compliance with section 21 of Article III of the Constitution has been established in this Legislature.'' Besides this the bill as enacted contains a provision that:

''It is hereby found and determined by the Legislature that due and legal notice of intention to apply for the passage of this Act was published in the Ocala Evening Star, a newspaper published in Marion County, Florida, which notice was published in the issue of said newspaper dated April 16th, 1929, which notice the Legislature finds and determines was in compliance with Section 21 of Article III of the Constitution of the State of Florida as amended at the General Election in 1928.''

Such determination by the Legislature is sustained by the Senate Journal entry of the ''affidavit of proof of publication'' of the notice containing a statement of ''the substance of the contemplated law,'' (see Keene v. Lake

County, 125 So. R. 908) and by the subject matter and substance of the bill as enacted, and such legislative determination so sustained, is conclusive on the question of compliance with the provisions of Section 21 of Article III of the Constitution relative to the publication of notice of proposed special or local laws.

The Court being evenly divided in applying the principles announced herein to the contents of the proof of publication of notice, the decree of the chancellor holding the notice inadequate to sustain the act as a valid law is affirmed.

TERRELL, C. J., concurs.

ELLIS, STRUM AND BUFORD concur in part and dissent in part.

BROWN, J., dissents.

ELLIS, J. (dissenting in part and concurring in part) :

In 1925 the County Commissioners of Marion County, proceeding under the provisions of Section 1531, Rev. Gen. Stats. 1920, resolved that the County should issue $4,550,-000. for road building. In due course the bond issue was authorized. In May, 1929, $3,550,000. of the bonds had been sold, leaving $1,000,000. unsold.

At that time, for reasons sufficient to the people concern, many people of the county deemed it expedient to discontinue the sale of the bonds authorized in 1925. Deeming that a special act of the Legislature was necessary to withdraw the authority of the County through its Board of Commissioners to issue the remaining $1,000,000. and such a law would be local in character, a notice was published in Marion County that the Legislature would be requested to enact a law requiring the Board of County

Commissioners of the County ''to refrain from offering for sale one million dollars par value of Marion County Road Bonds remaining unsold and undelivered of the $4,550,000. issue of Road Bonds of said County voted in the year 1925 upon the ratification of such law by a majority of the qualified freeholders of said County to be ascertained in an election to be called and submitted as shall be provided in said law'' etc. The notice was signed ''Marion County Tax Payers League by J. E. Baxter, President.''

A bill was introduced in the Legislature subsequently to the published notice which had for its title: ''An Act Relating to the Authority of the Board of County Commissioners of Marion County, Florida, to issue and sell the unsold portion of the Four Million, Five Hundred and Fifty Thousand Dollars ($4,550,000.00) of authorized County of Marion Highway Bonds; providing for the cancellation and abrogation of the authority of said Board of County Commissioners to issue and sell one-half of the One Million Dollars ($1,000,000.00) unissued and unsold portion of said bonds; providing for the submission to the qualified electors, who are freeholders in said Marion County, Florida, of the question of whether or not the authority of the Board of County Commissioners of Marion County, Florida, to issue and sell the other one-half of the unsold portion of said bonds, shall be abrogated and rescinded; and providing for a special election to be held, to determine such election and prescribe the effect thereof.'' (Chapter 14217, Special Acts 1929).

The Act provided in substance that the Board of County Commissioners should forthwith cancel $500,000 of the authorized bond issue; that the ''right, power and authority.'' of the Board to issue and sell the $500,000 of the bond issue directed and required to be cancelled be ''withdrawn, abrogated and set aside'' and the issuing of the

same was made unlawful; that as to the remaining $500,-
000 of that issue provision was made for submitting the
question of rescinding the Board's power to issue the
bonds to the freeholders of the County who were qualified
voters at the last general election, at an election to be
called for that purpose. It was also provided that the
issue and sale of any portion of the $1,000,000 of unsold
and unissued bonds should be prohibited until after the
result of the election was declared.

Section 7 of the Act reads as follows:

"Section 7. It is hereby found and determined by
the Legislature that due and legal notice of intention
to apply for the passage of this Act was published
in the Ocala Evening Star, a newspaper published in
Marion County, Florida, which notice was published
in the issue of said newspaper dated April 16th, 1929,
which notice the Legislature finds and determines
was in compliance with Section 21 of Article III of
the Constitution of the State of Florida as amended
at the general election in 1928."

When the bill was introduced in the Senate there was
attached to it an affidavit by H. D. Leavengood that a
"notice stating the substance of a contemplated law or
proposed bill relating to the authority of the Board of
County Commissioners of Marion County, Florida, to issue
and sell the unsold portion of the four million five hundred
and fifty thousand dollars of authorized County of Marion
Highway Bonds, has been published at least thirty days
prior to this date, by being printed in the issue of April 16,
1929, of the Ocala Evening Star, a newspaper or newspapers
published in Marion County, Florida; that a copy of the
notice that has been published as aforesaid and also this
affidavit of proof of publication are attached to the pro-

posed bill or contemplated law, and such copy of the notice so attached is by reference made a part of this affidavit.''

That affidavit was spread in full upon the Senate Journal and following that entry there appears the following: ''And the Senate thereupon determined that the evidence that said bill has been published in compliance with Section 21 of Article III of the Constitution has been established in this Legislature.''

The rules were then waived on motion and the bill was read a second time by its title only and proceeded to its final passage.

In 1928 Section 21 of Article III of the Constitution was amended so as to provide, among other things, that ''The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed by having affidavit of proof of publication attached to the proposed bill when the same is introduced in either branch of the Legislature, and which such affidavit constituting proof of publication shall be entered in full upon the journals of the Senate and of the House of Representatives, which entries shall immediately follow the journal entry showing the introduction of the bill.''

It is apparent from the above language that the Constitution requires that when a local or special act of the class affected by this provision is contemplated, first, that the notice of the intention to apply for the passage of such an act shall be published; second, that the evidence that such notice has been published shall be established in the Legislature; third, that *such* evidence shall be by an *affidavit* of *proof* of the *publication* attached to the bill when it is introduced; fourth; that the *affidavit constituting* the *proof* of publication shall be entered in full upon the journals of the *Senate* and of the *House* of Representatives, and fifth that such entries shall immediately follow the journal entry showing the introduction of the bill.

It is clear to my mind that the Constitution by such language determines the competency of the evidence by which the publication of the notice is to be established in the Legislature and declares that such evidence shall be by "affidavit of proof of publication attached to the proposed bill when it is introduced"; that it also requires that such "affidavit constituting proof of publication shall be entered in full upon the journals of the Senate and of the House of Representatives" and that such entries shall immediately follow the journal entry showing the introduction of the bill.

It is the affidavit which constitutes the evidence of publication. It is the affidavit which is to be attached to the bill and the affidavit which must be entered upon the journals. To say that the notice of intention to apply to the Legislature for the passage of the bill as the same was published shall be attached to the bill when introduced or entered in full upon the journals is to read a requirement into the Constitution which neither its letter nor its spirit requires.

Under the provisions of the amendment the Court may now "look to the journals and the evidence attached to the bill to ascertain whether they disclose that proper notice was given." See Whitney v. Hillsborough County decided at the present term. This Court has not held that the amendment now permits the courts to look to the notice which was actually given and to go into an inquiry as to the truth or falsity of the facts upon which the legislation is supposed to be predicated where the Legislature has sole jurisdiction of the subject. When it does so hold the doctrine announced in Stockton v. Powell, 29 Fla. 1, 10 So. R. 688, will have to be again restated.

The competency of the evidence by which the publication of the notice is to be proved is determined by the Consti-

tution. The sufficiency of that evidence as to the contents of the notice as published and the subject with which it deals is for legislative determination. A notice stating the substance of the bill to be introduced is required to be published thirty days before the bill is introduced in the locality where the matter to be affected by the bill is located, but the proof that such notice has been published is required to be established in the Legislature by affidavit.

The purpose of the constitutional provision is obvious. It is that the people of any locality to be affected by a proposed special or local law may be notified of the proposition to be submitted so that if they deem it expedient to do so they may exercise the right to "assemble together to consult for the common good, to instruct their representatives and to petition the Legislature for redress of grievances." Sec. 15, Declaration of Rights, Constitution of Florida.

The power to enact a local or special law depends upon the publication of a notice for the required time of intention to apply therefor. The sufficiency of the notice as to the contemplated law is for legislative determination subject to review by the courts for an unreasonable exercise of the discretion. It is restricted for proof to an affidavit of the publication of such notice.

I know of no authority which empowers the court to sit in judgment upon a legislative act which depends for its validity upon the evidence by which its necessity or expediency was made manifest to legislative judgment. The "judiciary is without power to enquire whether the requisite notice of application for the passage of local or special legislation has been given." See Whitney v. Hillsborough County, supra.

If an affidavit attached to a proposed local bill was absurd, wholly irrelevant and bore no relation to the sub-

ject matter of the bill, legislative action in passing it would be deemed invalid because of an arbitrary and unreasonable exercise of the power to enact local or special legislation, but where the affidavit describes a notice which relates to the subject matter of the proposed bill, described the matter to be affected and the relief which would be sought it is not within the power of the court to substitute its judgment for that of the Legisuature as to the question whether the notice served to advise the people concerned.

The strict rules of pleading are not and cannot be applied to such transactions. That the notice should be certain to that degree required of a plea in bar was not intended; rather that rule which applies in determining the sufficiency of a title to a bill should be all that is required.

There is another reason why the bill is valid. The published notice was to the effect that bill would be requested requiring the Board of Commissioners to refrain from offering for sale one million dollars of the bonds. The act requires the Commissioners to refrain from issuing $500,000 of the bonds. As to the remaining $500,000 the issue is left by the act to the determination of the people at an election to be held for that purpose. In that case no notice of special legislation is necessary under the Constitution. That portion of the act is valid. There is no constitutional objection to it. Now the notice referred to a bill which would require the County Commissioners to refrain from issuing the entire sum of one million dollars of the bond issue.

The Act provides that $500,000 of the issue shall be restrained and the other $500,000 of the issue shall be restrained if the people at an election to be held shall so declare.

In other words the Legislature gave half of what was asked for outright and the other half on condition that the

people concerned should so agree. In what way were the people misled by the notice?

Whether the failure to enter the affidavit on the journals of the House as well as those of the Senate is sufficient to invalidate the bill is not determined. See Keene v. Lake County, 125 So. R. 908.

I think the decree was erroneous and should be reversed.

BUFORD, J., concurs in part but dissents as to the conclusion.

STRUM, J. (concurring in part and dissenting in part)— I concur in all that portion of the opinion by Mr. Justice Whitfield relating to the power of the courts in appropriate litigated cases to examine the legislative journals and determine therefrom whether in the enactment of a duly challenged statute, the Constitution was complied with as to matters required by the Constitution to be entered upon the journals.

I am of the view that since the amendment of 1928 to Art. III, Sec. 21 of the Constitution, affirmatively requiring evidence that notice of intention to apply for passage of local legislation has been published to be established in the Legislature by having affidavit of proof of publication attached to the proposed bill when the same is introduced and also entered in full upon the journals of the House in which the bill is introduced (See Keene v. Lake County, 125 So. R. 908), the courts may look to the affidavit attached to the bill and to the affidavit as spread upon the journal for the purpose of determining whether the affirmative requirements of the Constitution just mentioned have been complied with in the passage of the bill, and if not, to so adjudicate, thereby rendering the bill inoperative. (See Whitney v. Hillsborough County, decided at this term.) The present mandatory requirement that such

evidence shall appear in the places named is of equal import with other mandatory requirements of the Constitution that certain other action taken by the Legislature in the enactment of a bill, as for instance the yeas and nays on final passage, shall appear upon the journals, and the powers of the courts with respect to an examination thereof to determine whether the 'affirmative requirements of the Constitution in that respect have been complied with, are the same.

In the abstract, I also concur in the rule enunciated by Mr. Justice Whitfield as to the method by which evidence may be sufficiently established in the Legislature that notice of intention to apply for local legislation has been given in conformity with the Constitution, Art. III, Sec. 21, as amended in 1928, and with Chap. 13791, Acts of 1929.

In my judgment, however, the rule has not been complied with in the passage of Chap. 14217, Acts of 1929, now under consideration, for the reason that there is a fatal variance between the notice that was published, and the bill that was actually enacted as a local law pursuant thereto.

The notice actually published refers to an intention to apply for the enactment of a law "requiring the board of county commissioners of Marion County, Florida, to refrain from offering for sale $1,000,000 par value of Marion County road bonds remaining unsold and undelivered of the $4,500,000 issue of road bonds of said county voted in the year 1925, upon the ratification of such law (that is, the proposed new law) by a majority of the qualified freeholders of said county, to be ascertained in an election to be called and submitted as shall be provided in said law   *   *   *.''

The bill that was actually passed pursuant to that notice, which became Chap. 14217, unqualifiedly and un-

conditionally cancelled and abrogated the authority of the county Commissioners to issue one-half of the remaining bonds ($500,000), and directed the commissioners to call an election to determine whether the other $500,000 should or should not be issued. Such a bill, in my judgment, is materially at variance with a notice of intention to apply for a bill to cancel the entire remaining $1,000,000 subject to the approval of the electors as to that action. If the proposed bill was not to become operative until ratified by the electors, no notice of intention to apply for its passage would be necessary (Constitution, Art. III, Sec. 21, as amended). The electorate might have been content to submit the cancellation of the entire remaining $1,000,000 to a vote, and therefore made no protest to their representatives in the Legislature. That is what the published notice stated would be done. Instead of that, the bill unconditionally cancels half the remaining $1,000,-000 and submits only the issuance of the other half to electorate. To that action there may have been much objection, had the electorate been previously notified as required by the Constitution that such would be the object of the proposed bill. It completely withdrew from the electorate any choice or voice as to the issuance of the half million unconditionally cancelled. It is for those reasons, that is, the variance between the notice as published and the bill as actually passed, that I think the requirements of the Constitution have not been complied with and that the chancellor was therefore correct in holding the bill void.

If Chap. 14217, as actually passed, conformed to the published notice of intention to apply therefor as shown by the publisher's affidavit attached to the bill and as spread upon the journal, then I would also concur in the view that the requirements of the Constitution, Art. III,

Sec. 21, and of Chap. 13791 had been complied with in respect to the establishment in the Legislature of evidence that notice of intention to apply for passage of the bill had been given, and that the Act is valid.

I differ from the opinion of Mr. Justice WHITFIELD only as to the application of the rules enunciated by him to this particular statute on account of the variance above mentioned.

I think the decree appealed from should be affirmed and therefore dissent.

BUFORD, J. (concurring)—I agreed with the opinion of Mr. Justice STRUM except that I think the record shows that neither the provisions of Sec. 3 of Art. III of the Constitution nor of Chapter 13791, Acts of 1929, were complied with in that the affidavit constituting proof of publication attached to the bill as introduced is not the same as the affidavit entered in the journal. This constitutes an additional reason why the decree appealed from should be affirmed.

BROWN, J. (dissenting).—To my mind, under Sec. 21 of Art. III of the Constitution, as amended in 1928, the "affidavit of proof of publication" which is required to be attached to the local or special bill when it is introduced, and which, to follow the language of the constitutional provision, "shall be entered in full upon the journals," when construed in connection with the preceding sentence, to which it evidently relates, must show the publication for the required time of a notice "which shall state the substance of the contemplated law." And this would require the affidavit so entered on the journals to set out the notice as published in full, so that the legislative journals would show actual compliance with the requirement of the constitutional command that the notice "shall

state the substance of the contemplated law.'' Certainly no affidavit of proof of publication would be complete or sufficient which merely stated, as the conclusion of the affiant, that the notice which had been published ''stated the substance of the contemplated law.'' And it is not so contended. This would leave it to the affiant to determine whether the constitutional mandate had been complied with, and open the door for the defeat and nullification of the plain purpose of the Constitution as amended. But it is contended that it is not necessary for the copy of the notice which was published, and which is attached to the affidavit, to be entered upon the journals. In other words, it is contended that the method prescribed by Chapter 13791, Laws of 1929, is a sufficient compliance with the constitutional mandate. To this I cannot accede. The provisions of said Chapter 13791 may accomplish the purpose which the constitutional amendment intended, but I think it does so by a method different from that prescribed by such constitutional amendment. That Act provides that the copy of the published notice shall be attached to the affidavit and by reference made a part thereof, and that a true copy of such notice shall be attached to the bill when introduced and shall, together with the affidavit of proof of publication, accompany the bill ''throughout the legislature and be preserved as a part thereof in the office of the Secretary of State,'' but that ''it shall not be necessary to enter the same (that is, the copy of the notice) in the journal.'' My opinion is that the copy of the notice which which has been published is an indispensable part of the ''affidavit constituting proof of publication'' which the constitutional provision says must be ''entered in full upon the journals.'' I am compelled therefore to dissent from the construction placed by the majority of the Court upon Sec. 21 of Art. III of the

Constitution as amended in 1928. I think the decree should be affirmed, but for reasons different from those stated in the opinions of my associates.

PER CURIAM.—A petition for rehearing has been filed herein suggesting that it is not clearly shown by the opinions whether the whole or any part of Chapter 14217, Acts of 1929, is held to be inoperative.

Mr. Chief Justice TERRELL, Mr. Justice WHITFIELD, and Mr. Justice ELLIS hold the Act to be valid in its entirety, while Mr. Justice STRUM, Mr. Justice BROWN and Mr. Justice BUFORD hold the Act to be invalid because of the legal insufficiency of the proof of publication or notice of the proposed local law. The Circuit Judge having adjudged the entire Act to be invalid and the members of the Supreme Court being equally divided as to the correctness of the holding of Circuit Court, the decree of the Circuit Court adjudging Chapter 14217 to be inoperative in its entirety is affirmed so as to dispose of the case, but such affirmance does not establish a precedent as to the matters involved. State ex rel. v. McClung, 47 Fla. 224, 37 So. R. 51.

Rehearing denied.

TERRELL, C. J. AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.