STATE, *ex rel.* J. W. GILLESPIE, *et al.,* v. COUNTY OF BAY, *et al.*

151 So. 10.
Opinion Filed November 13, 1933.

688

*L'Engle & Shands,* for Relators;

*J. M. Sapp* and *Joseph W. Bailey,* for Respondents.

STATEMENT.

The alternative writ of mandamus herein issued from this Court alleges in substance (par. 2) that the County of Bay in the State of Florida on or about June 1, 1925, "being duly authorized under the laws of the State of Florida, and in particular by Chapter 10367, Laws of Florida, 1925, to issue bonds for the purpose of constructing roads and bridges within said county, made, executed, sold and delivered its 1,000 bonds * * * for the purpose of constructing a road within said county, with the necessary bridges thereon; *. * * that said bonds are payable serially over a period of years, beginning June 1, 1925, and ending June 1, 1954;" (Par. 3) that on July 1, 1925, said county "being duly authorized under the laws of the State of Florida, and in particular by Chapter 10358, Laws of Florida, 1925, to issue bonds (payable July 1, 1955) for the purpose of providing funds for the construction of a bridge over and across the East Arm of St. Andrews Bay at a place known as Long Point, in Bay County, Florida, and for the construction of a bridge over and across one arm of St. Andrews Bay at a place known as Sulphur Point, in Bay County, Florida, made, executed, sold and delivered its 300 bonds under seal bearing said date, each of which bonds was designated "Toll Bridge Bond," numbered consecutively from 1 to 300, both numbers inclusive, said bonds being payable by

their terms on the 1st day of July, A. D. 1955." (Par. 4) That on or about August 1, 1926, said county "being duly authorized under the laws of the State of Florida, and in particular by Section 1531, Revised General Statutes of Florida, 1920, and Chapter 11425, Laws of Florida, 1925, to issue bonds for the purpose of constructing roads and bridges, made, executed, sold and delivered its 1,000 bonds under seal, bearing said date, each of which bonds was designated "Road and Bridge Bond," numbered consecutively from 1-A to 1000-A, both numbers inclusive, the proceeds of said bonds to be used for the purpose of constructing paved, macadamized or other hard-surfaced roads and necessary bridges. That said bonds mature by their terms over a period of years, commencing August 1, 1936, and ending August 1, 1955." (Par. 5) That on or about January 1, 1927, said county "being duly authorized under the laws of the State of Florida, and in particular by Chapter 10359, Laws of Florida, 1925, to issue bonds for the purpose of improving, repairing and rebuilding roads and bridges in said county, made, executed, sold and delivered its 200 bonds under seal, bearing said date, each of which bonds was designated "Road and Bridge Bond," numbered consecutively from 1 to 200, both inclusive, said bonds being payable by their terms on the 1st day of January, A. D. 1957. That said bonds were issued for the purpose aforesaid."

All the aforesaid bonds bear interest coupons payable semiannually at the rate of 6 per cent per annum at stated banks in New York City.

"That in and by each of said bonds described in Paragraphs 2, 3, 4 and 5 hereof said Bay County certified, recited and declared that all acts, conditions and things required by the laws of the State of Florida to exist, happen

and be performed pursuant to and in the issuance of said bond existed, had happened and had been performed in due and regular time, form and manner as required by law, and that said bond, together with all other indebtedness of Bay County, Florida, did not exceed any limit prescribed either by the Constitution or the Statutes of the State of Florida."

"That in and by each of said bonds described in Paragraph 2 hereof said Bay County also represented and recited that said bond was one of a series of bonds issued by Bay County, Florida, for the purpose of raising funds to construct certain hard surfaced roads and bridges within said county, and was issued pursuant to and in full compliance with the laws of the State of Florida, including the provisions of House Bill No. 906, Acts of 1925, approved on the 26th day of May, 1925, said House Bill No. 906 being Chapter 10367, Laws of Florida, 1925."

"That in and by each of said bonds described in Paragraph 3 hereof said Bay County, Florida, also represented and recited that said bond was one of a series of bonds issued by Bay County, Florida, for the purpose of raising funds for the construction of a toll bridge over and across the East arm of St. Andrews Bay at a place known as Long Point in Bay County, Florida, and for the construction of a bridge over and across one arm of St. Andrews Bay at a place known as Sulphur Point in said County, and was issued pursuant to and in full compliance with the laws of the State of Florida, including the provisions of House Bill No. 138, Acts of 1925, approved on the 17th day of April, 1925, said House Bill No. 138 being Chapter 10358, Laws of Florida, 1925."

"That in and by each of said bonds described in Paragraph 4 hereof said Bay County, Florida, also represented and recited that said bond was one of a series of bonds

issued by Bay County, Florida, for the purpose of raising funds to construct certain hard-surfaced roads and bridges within said County, and was issued pursuant to and in full compliance with the laws of the State of Florida, including the provisions of House Bill No. 116, Acts of the Extraordinary Session of 1925, approved on the 25th day of November, 1925, said House Bill No. 116 being Chapter 11425, Laws of Florida, 1925."

"That in and by each of said bonds described in Paragraph 5 hereof said Bay County, Florida, also represented and recited that said bond was one of a series of bonds issued by Bay County, Florida, for the purpose of raising funds for the improving, repairing and rebuilding of roads and bridges within said County, and was issued pursuant to and in full compliance with the laws of the State of Florida, including the provisions of Chapter 10359, Laws of Florida, 1925."

"That prior to the execution and delivery of said bonds described in Paragraphs 2, 3, 4 and 5 hereof said bonds were duly validated by decree of the Circuit Court for Bay County, Florida, and a certificate to that effect was duly endorsed on each of said bonds by the Clerk of said Court under the seal of said Court."

"That coupons numbered 12, 13, 14, 15 and 16, respectively, of said bonds described in Paragraph 2 hereof, became due by their terms on June 1, 1931, June 1, 1932, December 1, 1932, and June 1, 1933, and coupons numbered 17 and 18 of said bonds will mature by their terms on December 1, 1933, and June 1, 1934, respectively."

"That coupons of said bonds described in Paragraph 3 hereof numbered 13, 14, 15 and 16, respectively, became due by their terms on January 1, 1932, July 1, 1932, January 1, 1933, and July 1, 1933, and coupons numbered 17 and 18

of said bonds will respectively mature by their terms on January 1, 1934, and July 1, 1934."

"That coupons of said bonds described in Paragraph 4 hereof numbered 8, 9, 10, 11, 12, 13 and 14, respectively, became due by their terms on August 1, 1930, February 1, 1931, August 1, 1931, February 1, 1932, August 1, 1932, February 1, 1933, and August 1, 1933, and coupons numbered 15 and 16 of said bonds will respectively mature by their terms on February 1, 1934, and August 1, 1934."

"That coupons of said bonds described in Paragraph 5 hereof numbered 10, 11, 12 and 13, respectively, became due by their terms on January 1, 1932, July 1, 1932, January 1, 1933, and July 1, 1933, and coupons numbered 14 and 15 of said bonds will respectively mature by their terms on January 1, 1934, and July 1, 1934."

"That interest has accrued on said bonds described in Paragraphs 2, 3, 4 and 5 hereof and remains unpaid, and interest will accrue on bonds of said issue now outstanding prior to October 1, 1934, in the amounts set forth in the following schedule:

| Description of Issue | Number of Coupons | Aggregate Amount | Date of Maturity |
|---|---|---|---|
| Bonds described | 12 | $30,000 | 6-1-31 |
| in Paragraph 2 | 13 | 30,000 | 12-1-31 |
| hereof, dated | 14 | 30,000 | 6-1-32 |
| June 1, 1925 | 15 | 30,000 | 12-1-32 |
| | 16 | 30,000 | 6-1-33 |
| | 17 | 30,000 | 12-1-33 |
| | 18 | 30,000 | 6-1-34 |
| Bonds described | 13 | 9,000 | 1-1-32 |
| in Paragraph 3 | 14 | 9,000 | 7-1-32 |
| hereof, dated | 15 | 9,000 | 1-1-33 |
| July 1, 1925 | 16 | 9,000 | 7-1-33 |

|                          |     |        |          |
|--------------------------|-----|--------|----------|
|                          | 17  | 9,000  | 1-1-34   |
|                          | 18  | 9,000  | 7-1-34   |
| Bonds described          | 8   | 30,000 | 8-1-30   |
| in Paragraph 4           | 9   | 30,000 | 2-1-31   |
| hereof, dated            | 10  | 30,000 | 8-1-31   |
| August 1, 1926           | 11  | 30,000 | 2-1-32   |
|                          | 12  | 30,000 | 8-1-32   |
|                          | 13  | 30,000 | 2-1-33   |
|                          | 14  | 30,000 | 8-1-33   |
|                          | 15  | 30,000 | 2-1-34   |
|                          | 16  | 30,000 | 8-1-34   |
| Bonds described          | 10  | 6,000  | 1-1-32   |
| in Paragraph 5           | 11  | 6,000  | 7-1-32   |
| hereof, dated            | 12  | 6,000  | 1-1-33   |
| January 1, 1927          | 13  | 6,000  | 7-1-33   |
|                          | 14  | 6,000  | 1-1-34   |
|                          | 15  | 6,000  | 7-1-34"  |

"That the respondents, constituting the Board of County Commissioners of said County of Bay, as such Board, have duly adopted a resolution directing that all moneys collected from the State gasoline tax be applied to the purchase of bonds through the Board of Administration of the State of Florida, and that said resolution has never been vacated, suspended or modified, and so it is that said County of Bay is without funds to pay interest which will accrue upon the bonds hereinabove described or interest thereon which has accrued, except from and out of sums heretofore collected from *ad valorem* taxes levied, and from such taxes as may hereafter be levied, by said county."

That the relators are the bearers and owners of one of each series of the bonds above described, and of the inter-

est coupons appertaining to said bonds which are now past due as alleged.

"That the relators purchased said bonds and all interest coupons appertaining thereto prior to maturity thereof for value, without notice of any defense thereto."

"That under and by the laws of Florida it was and is the duty of the respondents * * * and their respective successors in office, in making, completing and adopting the annual budget or estimate of said county for the fiscal year beginning October 1, 1933, and ending September 30, 1934, to include therein amounts sufficient to pay and discharge said interest, and thereupon to levy by tax upon the taxable property within said county sums sufficient to produce, when collected, not less than the amounts of said interest now due and to fall due prior to October 1, 1934, on each issue of said bonds, less such collections from *ad valorem* taxes as are now available for payment of said interest as alleged in Paragraphs 9 and 10 hereof, and to include the amounts of the tax so levied for interest on each issue of said bonds in the amount determined by said Board of County Commissioners to be raised for all county purposes, and to enter upon their minutes the rate to be levied for such tax, together with other rates to be levied, and to ascertain the aggregate rate necessary to cover all such taxes, including the taxes so levied for the payment of interest on said bonds, and to report the same to the county assessor of taxes; and thereupon under said laws it is the duty of the respondent Duncan McQuagge, as county assessor of taxes of said county, and his successors in office, to calculate, carry out and extend the full amount of taxes for all county purposes, including the tax so levied for the payment of interest on said bonds, as aforesaid, upon the assessment roll of said County of Bay for such ensuing year, and to

annex to said assessment roll, and to each of the two copies thereof required by law to be made, his affidavit in the form prescribed by law."

That the Board of County Commissioners have "made and completed a county budget, or estimate of the necessary and ordinary expenses and all of the special and extraordinary expenditures contemplated for the ensuing fiscal year, to-wit, the fiscal year beginning the first day of October, 1933, and ending the 30th day of September, 1934, and caused the said estimate to be published as required by law, together with notice that the said Board of County Commissioners would hold a meeting on * * * (a stated day) to consider, act upon and adopt the said estimate."

"That prior to the adoption of said budget or estimate, and prior to the making of the county tax levy by the Board of County Commissioners of said County of Bay for the said ensuing fiscal year, the relators specially requested the respondents County of Bay and * * * the Board of County Commissioners of said county, to revise the said budget or estimate so as to include therein appropriations for the payment of all interest theretofore accrued and unpaid and all interest which would accrue prior to October 1, 1934, upon the bonds described in Paragraphs 2, 3, 4 and 5 hereof, and at the same time the relators demanded of said respondents County of Bay and * * * the Board of County Commissioners of said county, that taxes be levied by the said Board of County Commissioners in amounts sufficient, when collected, to produce and pay the sums respectively appropriated for the payment of interest on said issues of bonds described in Paragraphs 2, 3, 4 and 5 hereof."

"That, notwithstanding the premises, the said respondents County of Bay, Florida, and * * * the Board of County

Commissioners of said county, contrary to the statutes of Florida, failed and refused, and still fail and refuse, to revise the said budget or estimate so as to include therein, or otherwise to appropriate any sum whatever for the payment of, interest on said bonds."

. ."That by said tentative estimate of budget there was no estimated revenue for the payment of interest on said bonds * * * except taxes to be levied, yet, notwithstanding the premises, the respondents County of Bay, Florida, and * * * the Board of County Commissioners of said county, contrary to the statutes of Florida, failed and refused to revise the said budget or estimate so as to include therein, or otherwise appropriate any adequate sums for the payment of, interest on said bonds."

"That while the fact was and is that prior to its passage by the Legislature of Florida evidence was established in the Legislature that notice of intention to introduce such Act (House Bill 116, Extraordinary Session of 1925) had been duly given as required by Section 21, Article III, of the Constitution and the laws of Florida, and said bonds had been duly validated by decree of the Circuit Court for Bay County, Florida, as aforesaid, the respondent Board of County Commissioners contend that they are precluded by a final decree of the Circuit Court for Bay County, Florida, from levying any taxes for interest on said bonds described in Paragraph 4 hereof. That said final decree was rendered in a suit in equity brought by one J. Van Wilhite as a property owner of said county against said Board of County Commissioners and the tax assessor and tax collector of said county, to enjoin the levy and collection of taxes for interest on said bonds, in which it was alleged that no notice of intention to introduce House Bill No. 116 (Chapter 11425) was published prior to its introduction or

passage by the Legislature, as required by Section 21, Article III, of the Constitution. That neither of the relators, nor any other holder of bonds of said county, was a party to said cause. That the bill of complaint in said cause did not disclose the fact that said bonds had been validated. That neither of the relators herein nor any other holder of bonds of said issue is affected or concluded by said decree."

The alternative command is that the respondent County Commissioners "do forthwith and without delay reconvene in a meeting of the Board of County Commissioners of the County of Bay, Florida, and that thereupon you, the said members of the Board of County Commissioners of said county, as said board, revise said annual budget or estimate of the County of Bay, Florida, for the fiscal year beginning October 1, 1933, and ending September 30, 1934, in the following particulars, to-wit:

"(1) By appropriating and including in said budget amounts sufficient to pay all past due interest and interest to accrue prior to October 1, 1934, on the outstanding bonds of said county of the issues described in Paragraphs 2, 3 and 5 hereof.

"(2) By appropriating and including in said budget an amount sufficient to pay all past due interest (except the amount of $89,220.00 embraced within said judgment of the United States District Court for the Northern District of Florida) and interest to accrue prior to October 1, 1934, on the outstanding bonds of said county of the issues described in Paragraph 4 hereof; and that you, the respondents Joe D. Holmes, Wallace H. Laird, J. C. Gainer, Roy Van Kleeck and D. V. Sale, as and constituting the Board of County Commissioners of said county, and your respective successors in office, do levy by tax upon the taxable property in the County of Bay, Florida, sums sufficient to

produce when collected not less than the amounts so appropriated, as herein directed, for interest, as aforesaid, after due allowance against or deductions from said aggregate amounts of interest sums now on hand collected from *ad valorem* taxes levied for interest on said bonds, and that you include the amounts of taxes so levied in the amount determined by said Board of County Commissioners to be raised for all county purposes, and that you and the said respondent clerk do enter upon the minutes of said board the rates levied for such taxes, together with other rates levied, and that you, the members of said Board of County Commissioners do ascertain the aggregate rate necessary to cover all such taxes, including the tax so levied for the payment of interest on said bonds, as aforesaid; and that you, the said respondents do report the same, or cause the same to be reported, to the County Assessor of taxes of Bay County, Florida; and we do command you, the respondent Duncan McQuagge, as county assessor of taxes of said county, and your successors in office, thereupon to calculate, carry out and extend the full amount of taxes for all county purposes, including the taxes so levied for the payment of interest on said bonds, upon the assessment roll of said county for such ensuing fiscal year," etc., or show cause, etc.

Sections 1531 and 1532, Revised General Statutes, are as follows:

"Whenever the board of county commissioners of any county shall deem it expedient, or the best interests of such county, to issue the county bonds of their county, for the purpose of constructing paved, macadamized, or other hard-surfaced highways, or erecting a court house or jail, or other public buildings, and funding the outstanding indebtedness of the county, or for any of such purposes, they shall determine by resolution to be entered in their records,

what amount of bonds is required for such purpose, and the rate of interest to be paid thereon, and the time when the principal and the interest of such bonds shall be due and when payable." Sec. 2309 (1531) Comp. Gen. Laws, 1927.

"When any county bonds shall have been issued by the county commissioners of any county of the State of Florida, under authority of law, for the purpose of erecting a court house, jail, armory or other county buildings, it shall be the duty of such county commissioners to levy annually, by tax upon taxable property in the county, a sum sufficient to pay the interest upon the said bonds, and also a sum sufficient to raise the amount annually required as a sinking fund to meet the principal of the bonds." Sec. 2310 (1532) Comp. Gen. Laws, 1927.

"CHAPTER 11425 — (No. 90)

"AN ACT Authorizing Bay County, Florida, to Issue County Bonds in the Sum of One Million Dollars for the Purpose of Constructing Paved, Macadamized or Other Hard Surfaced Highways, and the Construction of Bridges, Providing for the Employment of Engineers to Make Surveys for said Roads and Bridges, to Prepare Plans and Specifications Therefor and the Estimated Costs Thereof, and Validating Proceedings Relating to said Bonds.

"*Be It Enacted by the Legislature of the State of Florida*:

"Section 1. The County Commissioners of Bay County, Florida, in their corporate capacity, are hereby authorized to issue bonds of said county to an amount not exceeding One Million Dollars in addition to the bonds now outstanding bearing such rate of interest not to exceed six per cent. per annum, payable semi-annually, and coming due at such time or times not exceeding thirty years from the date of their issue, upon such conditions as may be determined by resolution of the County Commissioners adopted and re-

corded in their minutes. The proceeds from the sale of said bonds shall be used for the following purposes:

"One Million Dollars to be used in constructing paved, macadamized or other hard surfaced highways, and for bridges. For the security and payment of said county bonds and the interest thereon, the entire taxable property shall be, and the same is, hereby pledged.

"Sec. 2. The County. Commissioners are authorized to incur such reasonable expense in the preparation and the sale of said bonds as may be necessary, and to pay for the same out of the proceeds of the sale of said bonds, and also to pay the first eighteen months' interest out of such proceeds.

"Sec. 3. The Board of County Commissioners shall levy annually all such special taxes on the taxable property within the limits of said county as may be necessary to pay the interest on said bonds and provide a sinking fund for the payment thereof, and such sinking fund shall be properly invested in bonds hereby authorized to be issued, or other county or municipal bonds, but the County Commissioners may, if they deem it advisable, postpone the levy of taxes for the creation of a sinking fund until the year of 1927.

"Sec. 4. Said bonds may be sold at private sale at not less than par and accrued interest in accordance with the action of the Board of County Commissioners in connection therewith, and all proceedings had or taken in reference thereto are hereby validated and confirmed.

"Sec. 5. F. M. Nelson, Fred T. Bennett and J. D. Sellers shall constitute the trustees for said bonds and shall serve for the term of four years. Their successors shall be appointed by the Board of County Commisioners, at the expiration of their term, and any vacancy occurring among

said trustees shall be filled by the Board of County Commissioners. The trustees for said bonds shall exercise all of the power and perform all of the duties relating to said bonds as prescribed by the laws of the State of Florida.

"Sec. 6. This Act shall take effect immediately upon becoming a law.

"Approved November 25, 1925."

By return the respondents admit the allegations of the alternative writ in paragraphs 2, 3, and 5 as to the issue of bonds by the County of Bay, but deny that the $1,000,000 of bonds referred to in paragraph 4 were issued under authority of Section 1531, Revised General Statutes; that said Section 1531 "did not and could not have authorized the issuance of said bonds, for at the time of the issuance thereof there had been previously issued and were then outstanding bonds of Bay County, Florida, constituting legal obligations of said County in the total sum of $2,079,000.00 bearing interest at the rate of 6% per annum and requiring a tax levy each and every year sufficient to produce the sum of $124,740.00 for the payment of interest alone and a tax levy each year sufficient to produce a reasonable and sufficient fund to pay the total principal of $2,079,000.00 when the same should become due and payable. That the taxable assessed valuation of all of the property, including both real and personal property in Bay County, Florida, at the time of the issuance of said bonds described in Paragraph 4 of said alternative writ amounted to $6,288,081.00 and did not amount to any more than said sum and for the Board of County Commissioners of Bay County, Florida, to issue the said bonds in the sum of $1,000,000.00 would have increased the bonded indebtedness of Bay County, Florida, so as to have constituted a gross abuse of the discretion of said Board of County Commissioners

in determining the amount of bonds to issue, and if the said Board of County Commissioners had attempted to determine the amount of bonds to be issued and had affixed the same at $1,000,000 and had issued said bonds in said sum, such act would have been abuse of their discretion and wholly illegal, null and void. Said issue of bonds as mentioned in Paragraph 4 of the alternative writ was therefore unauthorized under the provisions of Section 1531 of the Revised General Statutes of Florida of 1920. Respondents also deny that said pretended bonds could have been issued under authority of Chapter 11425, Laws of Florida of 1925, for the reason that said Chapter 11425, Laws of Florida of 1925, is a special or local law applicable only to the County of Bay, Florida, and was not effectively passed and enacted into law by the Legislature of the State of Florida, in that no notice was given or published in Bay County, Florida, prior to the introduction and passage of said Chapter 11425, as required by the Constitution and laws of the State of Florida, wherefore said Chapter 11425, laws of Florida of 1925, was and is unconstitutional, null and void and the bonds so issued under the pretended authority thereof are wholly illegal, null and void and constitute no binding obligation against the County of Bay, Florida. That the said bonds as described in Paragraph 4 of the alternative writ of mandamus, and the issuance of said bonds, was never authorized by a vote of the qualified electors of the County of Bay, Florida."

Respondents deny any obligation of the county on the bonds and coupons described in paragraph 4 of the alternative writ.

Respondents "deny that is is their duty to include in the current annual budget any sum for the payment of interest, past or current, on the pretended bonds described in Para-

graph 4 of the alternative writ, for the reason that said bonds are null and void and constitute no binding obligation against Bay County, Florida." ,

Respondents "say that they are without right or authority to include in the budget of Bay County any levy for taxes or other appropriation for the payment of interest on the bonds described in Paragraph 4 of the alternative writ of mandamus, and aver that on or about the 3rd day of February, A. D. 1931, there was entered in the Circuit Court of Bay County, Florida, in Chancery, a certain decree and judgment in that certain cause wherein J. Van Wilhite as a property owner and tax payer of Bay County, Florida, was complainant, and the Board of County Commissioners of Bay County, Florida, the tax collector of said County, including Wallace H. Laird, J. C. Gainer and Roy Van Kleeck, who are respondents herein, as the tax authorities and officers of Bay County, Florida, were respondents, enjoining and prohibiting until further order of the Court the further assessment or collection of taxes for the payment of the interest on said bonds described in Paragraph 4 of the alternative writ of mandamus, for the reason that said bonds and annexed interest coupons were illegal, null and void; and that on or about the 14th day of November, A. D. 1931, a final decree was entered in said cause by said Circuit Court, making perpetual the said injunction and prohibitory order, which final decree is still in full force and effect."

"Respondents aver that the total taxable assessed valuation of real and personal property in Bay County, Florida, for the fiscal year 1933-1934, is approximately the sum of $2,225,000.00 and not in excess of $2,400,000.00; that exclusive of the bonds described in Paragraph 4 of the alternative writ of mandamus, Bay County, Florida, has issued

and outstanding approximately $2,223,000.00 of bonds, together with large sums of accrued interest thereon, payment of which Bay County is now in default all of which bonds and accrued interest constituting legal and binding obligations of the County. It is therefore shown that exclusive of the bonds described in Paragraph 4 of the alternative writ, the total bond obligations of Bay County, Florida (including interest in default), greatly exceed the total assessed valuation of the real and personal property in Bay County, Florida; that the total taxable assessed valuation of the real and personal property of the County as above alleged embraces and includes the real and personal property within the limits of the municipalities of the City of Panama City and the City of Lynn Haven; and that the City of Panama City has issued and outstanding municipal bonds of said City, constituting legal obligations thereof in the approximate sum of $1,800,000.00, and that at this time the said City of Panama City is in default of principal and interest payments on account of said obligations in the approximate sum of $800,000.00. That the City of Lynn Haven has outstanding approximately $300,000.00 of principal bond obligations, and is in default for large sums of interest thereon. That the power of taxation of the said City of Panama City and the said City of Lynn Haven, and their duty and obligation to levy and collect taxes for the payment of their respective bonds and interest thereon is equal to the power and duty of the County of Bay to levy and collect taxes for the payment of its bonds and the interest thereon. That it is the duty of the Board of County Commissioners of Bay County to make and collect proportionate levy of taxes for the payment of all outstanding bonds and interest that are legal obligations, and it is likewise the duty of the taxing authorities of the City of Panama

City and the City of Lynn Haven to make proper provision for the levy and collection of taxes for the payment of the bonds and interest thereon of said cities. From this state of facts it is apparent that for the Board of County Commissioners of Bay County, Florida, to attempt to levy a sufficient millage to pay the past due and current interest on the bonds described in Paragraphs 2, 3, and 5 of the alternative writ in any one year, along with the remaining legal obligations of the County not represented by Relators, would constitute a confiscatory tax and levy against the real and personal property of Bay County, and it would necessarily follow that the taxpaying citizenry of the County would be unable to pay taxes, which would result in a total lack of funds with which to carry on the important governmental operations of the County; and such a levy would therefore be unauthorized, illegal, null and void."

Respondents "deny that prior to its passage by the Legislature of the State of Florida evidence was established in the Legislature that notice of intention to introduce House Bill 116, Extraordinary Session of 1925, the same being Chapter 11425, Laws of Florida of 1925, had been duly given as required by Section 21, Article III of the Constitution and laws of Florida; and deny that the validation proceedings had the effect of making legal and binding obligations of the bonds described in Paragraph 4 of the alternative writ of mandamus; and aver that they are precluded by the decree in the suit brought by J. Van Wilhite against the taxing authorities of Bay County, from recognizing said bonds as legal obligations of the County, and are enjoined by said decree from levying any taxes for the payment of interest on said bonds; that the records of the Circuit Court of Bay County, Florida, at the time said suit was brought by J. Van Wilhite, showed that an attempt

had been made to validate said bonds; and aver that the said injunction judgment and decree so obtained by J. Van Wilhite was entered by a Court of competent authority, and that said judgment and decree was, and is, a valid and binding decree in full force and effect at this time."

The injunction decrees of the State Circuit Court referred to in the pleadings are as follows:

"This cause coming on to be heard upon application of the complainant, upon his sworn bill of complaint, and supplemental affidavits filed in connection therewith and in support thereof, for a temporary restraining order, and the defendants having interposed their demurrer to said bill of complaint; and, after hearing the argument of counsel upon said application and demurrer, it appearing by the allegations of said bill of complaint that Chapter 11425 (or House Bill 116), Laws of Florida, 1925, is a special Act passed at an extraordinary session of the Legislature of Florida, called by proclamation of the Governor of Florida on November 2, 1925, which said session convened on November 17, 1925, and adjourned on November 25, 1925; that no notice of intention to apply to the said Legislature for the passage of said Act was given as required by Section 21 of Article III of the Constitution of Florida, as said section provided prior to the amendment thereof in 1928, nor as required by the Statute then in force and adopted in pursuance of said constitutional provision; that as only 23 days elapsed between the date of said proclamation of the Governor and the adjournment of said extraordinary session of the Legislature, the constitutional requirement of 60 days notice being given prior to the introduction of the proposed law into the said extraordinary session of said Legislature, could not have been complied with; and that evidence of such notice could not have been established in the Legislature

before said Act was passed and approved; that no notice whatever of the introduction of said bill was given; and it appearing from the allegations of said bill of complaint and from said Act appended thereto as an exhibit thereto that said Act contained nothing to show that the money raised by said tax herein purported to be authorized to be levied was to be expended in construction of roads and bridges within Bay County, Florida, or whether money raised said tax was to be expended inside or outside of said county; and the demurrer being a general demurrer, the question presented to the Court thereby being whether or not the bill of complaint states ground for equitable injunctive relief, said demurrer seem not to be well founded in point of law."

"In the case of Horton v. Kyle, 81 Fla. 274, 88 So. 757, a similar question arose before the Supreme Court of Florida, in which the Court, speaking through Chief Justice BROWN, said: 'There was no way in which a member of the extra session, or anyone else in the State, could have known that the Legislature would have been called in extra session prior to the Governor's proclamation, and for us to presume that the necessary notice was given would be to presume that the members had the gift of prevision * * *.' "

"The Chief Justice stated in the body of the opinion that the Court was unwilling to adopt a violent presumption 'That notice was given of intention to do something at an extra session of the Legislature before it was known that there would be an extra session, and held in the case of Horton v. Kyle, *supra*, that the Act in question was not passed in conformity to the requirements of the Constitution and was therefore void."

"In the case of Horton v. Kyle, *supra*, the law in question

was passed at an extra session of the Legislature, the proclamation calling the extra session being issued on November 15, 1918, the Legislature, having met on November 25, 1918, and adjourned on December 7, 1918, it appearing that only 22 days elapsed between the date of the proclamation and the adjournment of the Legislature at which the law was passed, discussed by the court in Horton v. Klye, *supra.*"

"This same question was again before the Supreme Court in the case of Williams v. Dormany, 126 So. 117, in a Commissioner's decision rendered March 10, 1930, adopted by the Court. The question before the Court in that case was one as to the constitutionality of an Act passed at a special session of the Legislature convening on November 17, 1925, iln pursuance of a proclamation of the Governor made on November 2, 1925, and adjourning November 25, 1925, which was the same session at which the Act now in question in the case at bar was passed."

"In Williams v. Dormany, *supra,* the Court said: 'Chapter 11541 was passed at a special session of the Legislature, 1925, and approved November 30, 1925. The special session was convened on the 17th day of November, 1925, having been called together by proclamation of the Governor dated the 2nd day of the same month. As said Chapter 11541 is not a general law and was intended to operate only in a certain locality, it was necessary that notice, in conformity with the provisions of Section 3 of the Constitution, be given. The calling of the extraordinary session by the Governor was not known in time to make the required publication of the notice with reference to local or special laws before the approval of the Act in question. It comes within the rule stated in Horton v. Kyle, *supra.* The Act not having been passed as required by the Constitution is void.'

In the case of Williams v. Dormany, *supra,* the Supreme Court cited with approval, the case of Horton v. Kyle, *supra."*

"This question was again before our Supreme Court in the case of Smith Bros. v. Williams, 126 So. 367, questioning the constitutionality of an Act passed at the regular session of the Legislature of 1925. The Court again, in that case and on rehearing, cited with approval the case of Horton v. Klye, *supra."*

"From what has been said it is apparent that the demurrer to the bill of complaint should be overruled."

"It is Therefore Ordered, Adjudged and Decreed, That the demurrer of the respondents to the bill of complaint be, and the same is hereby, overruled."

"It is Further Ordered, Adjudged and Decreed, That the respondent, Charlie T. Porter, a Tax Collector of Bay County, Florida, be and he is hereby enjoined and restrained from collecting any taxes on real and personal property levied or assessed under the provision of Chapter 11425, Laws of 1925, known as House Bill 116 of the Special Session of the Legislature 1925; and from attempting to collect any tax levied for the purpose of paying the principal and interest of the bonds purported to have been issued under the provisions of said Chapter 11425, Special Laws of Florida, 1925 (or said House Bill Number 116), Special Laws of Florida, 1925; and from levying on any of the personal property or selling or attempting to sell, any real or personal property in Bay County, Florida for non-payment of any tax assessed or levied for the payment of the said principal or interest of said bonds, until the further order of this Court."

"And it is Further Ordered, Adjudged and Decreed, That the respondents, Custer P. Russ, member and chair-

man, and Roy Van Kleeck, members of the Board of County Commissioners of Bay County, Florida, be, and they are each of them hereby enjoined and restrained from making any further or other levy of any tax upon the real and personal property in Bay County, Florida, for the purpose of paying principal and interest, or either of them, of bonds purported to have been issued under the provisions of said Chapter 11425 (House Bill 116) of the special Acts of Florida, 1925, until the further order of this Court."

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, That this injunction, being in the nature of a public matter, the complainant be relieved from giving bond until further order of this Court, the complainant having offered evidence of his inability to give such bond."

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, That this order shall become effective upon the service of a copy thereof upon the several respondents named herein."

"DONE AND ORDERED, IN CHAMBERS, at Panama City, Bay County, Florida, this the 3rd day of February, 1931."

"FINAL DECREE

"This cause came on for hearing on motion of the Complainant for final decree. It appearing to the Court that decree *pro confesso* has been heretofore regularly and duly entered against each and all of the respondents in this cause, either for failure to appear or to plead to or answer the bill of complaint herein; and the Court being of the opinion that the equities of said cause are with the complainant and all other persons similarly situated;

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT the temporary injunction granted in this cause under date of February 3, 1931, and recorded in Chancery Order Book E, Page 475, enjoining and restraining the above

named respondents as herein set forth, be and the same is hereby made permanent and perpetual.

"DONE AND ORDERED at Chambers, in Panama City, Bay County, Florida, on this the 14 day of November, 1931."

The relators filed a motion "that a peremptory writ issue pursuant to the alternative writ, notwithstanding the answer or return of the respondents."

WHITFIELD, J.—A peremptory writ of mandamus is sought by bond holders to compel the levy and assessment of ad valorem taxes to meet interest payments for the years 1931-1934 on four issues of county bonds.

It is asserted by the respondents that the $1,000,000.00 bond issue of August 1, 1926, referred to in Paragraph 4 of the bill of complaint as shown in the statement filed herewith, could not have been authorized by Section 1531, Revised General Statutes, Section 2309, Compiled General Laws, 1927, shown in the statement, because at the time the bonds were issued the outstanding bonded indebtedness of the county as shown in the statement was relatively so great and the assessed valuation of the taxable property in the county was relatively so small, that "to issue the said bonds in the sum of $1,000,000.00 would have increased the bonded indebtedness of Bay County, Florida, so as to have constituted a gross abuse of the discretion of the said board of county commissioners in determining the amount of bonds to issue, and if the said board of county commissioners had attempted to determine the amount of bonds to be issued and had affixed the same at $1,000,000.00 and had issued said bonds in said sum, such act would have been abuse of their discretion and wholly illegal, null and void. Said issue of bonds as mentioned in Paragraph 4 of the alternative writ was therefore unauthorized under the pro-

visions of Section 1531 of the Revised General Statutes of Florida of 1920."

. If it be assumed that the facts alleged as to bonded debt and assessed valuations of taxable property in the county as shown by the statement, would have justified a court in refusing to validate the bonds or in enjoining their issue, under the principles announced in Getzen v. Sumter County, 89 Fla. 45, 103 So. 104, the facts as to the bonded debt and assessed valuations of taxable property in the county as alleged do not affect the validity of the bonds if they were authorized by law and have been issued and sold for value. It does not appear that any judicial proceedings were taken to prevent such issue and sale.

Respondents aver that the issue of the bonds described in Paragraph 4 of the alternative writ of mandamus was never authorized by a vote of the qualified electors of Bay County. Section 1531, Revised General Statutes, Section 2309, Compiled General Laws, 1927, contemplates that before bonds are issued thereunder, such issue shall be authorized at an election by the legal voters of the county. Section 2309 (1532), Compiled General Laws, 1927. It is not necessary to here consider whether, if the bonds of August 1, 1926, were issued under Section 1531, Revised General Statutes, Section 2309, Compiled General Laws, 1927, and the issue was not approved at an election by the legal voters of the county, the recitals in the bonds and in the required proceedings had for the bond issue and the validating decree have cured the defects if any in the bonds as issued. Bonds issued under Chapter 11425, Acts of 1925, are not required to be approved by a vote of the electorate; and if that Chapter is a valid law there is statutory authority for issuing the bonds, referred to in Paragraph 4.

Chapter 10367, Acts of 1925, under which the bonds men-

tioned in Paragraph 2 of the alternative writ were issued provides that "The Board of County Commissioners shall levy annually all such special taxes on the taxable property within the limits of said County, as may be necessary to pay the interest on said bonds and provide a sinking fund for the payment thereof."

Chapter 10358, Acts of 1925, under which the bonds referred to in Paragraph 3 were issued provides that "Said Board of County Commissioners shall levy annually such special taxes on all taxable property within said Bay County, as may be necessary to pay interest on said bonds, the principal upon all of said bonds is to be payable from unlimited taxation upon all of the taxable property in the said Bay County, Florida, and to provide a sinking fund therefor, after making proper deductions for the net amount of tolls and charges collected."

Chapter 11425, Acts of 1925, under which the bonds referred to in Paragraph 4 may have been issued provides that "The Board of County Commissioners shall levy annually all such special taxes on the taxable property within the limits of said County as may be necessary to pay the interest on said bonds and provide a sinking fund for the payment thereof."

Chapter 10359, Acts of 1925, under which the bonds mentioned in Paragraph 5 were issued provides that "Said Board of County Commissioners shall levy annually such special taxes on all taxable property within said Bay County, as may be necessary to pay the interest on said bonds, the principal on all of the said bonds is to be payable from the unlimited taxation upon all of the taxable property in the said Bay County, Florida, and to provide a sinking fund therefor."

It is contended that the issue of August 1, 1926, com-

prising $1,000,000.00 of bonds "are void and constitute no binding obligation against Bay County," because the bonds were issued under Chapter 11425, a local law enacted at the Extraordinary Session of 1925, which Act, it is argued, being a local law, violates the Constitution in that "prior to the passage of this local bill no evidence was established in the Legislature of the notice of intention to introduce said bill for passage as required by Section 21, Article III, of the Constitution of Florida," before its amendment in 1928.

Prior to its amendment in 1928, Section 21, Article III, of the Florida Constitution provided that "No local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or the thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least sixty days prior to the introduction into the Legislature of such bill, and in the manner to be provided by law. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed." See Section 94 (78), 95 (79), Comp. Gen. Laws, 1927.

This Court has held that: "The courts have no power to inquire whether the notice of application to the Legislature for local or special legislation, required by Section 21 of Article III of the Constitution and by the legislation thereunder defining the method of publishing and providing the publication of such notice (Act of May 31, 1887, Chapter 3707 of the Statutes) has been given. To ascertain and decide whether the required notice has been given is exclusively a legislative function and duty, and the passage of a special or local Act is a legislative judgment that proper notice has been given and duly published and that the legal evidence thereof was 'established in the Legislature'

before the bill was passed, and the courts are concluded by such judgment." Telfair Stockton v. Benjamin R. Powell, et al., 29 Fla. 1, 3, 10 So. 688.

See also State *ex rel.* Buford v. Fearnside, *et al.*, 87 Fla. 349, 100 So. 256; Douglas, *et al.*, v. Webber, *et al.*, 99 Fla. 755, 128 So. 613; Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771; Whitney v. Hillsborough County, *et al.*, 99 Fla. 628, 127 So. 486; Apgar v. Wilkinson, 95 Fla. 457, 116 So. 78.

"The Journals need not affirmatively show that notice of local bills have been duly published." Rushton v. State, 58 Fla. 94, 50 So. 486.

"The Legislature, not the courts, determines whether notice of local legislation has been published. Vann, *et al.*, v. State, 65 Fla. 160, 61 So. 323.

"If the Journal of a House of the Legislature furnishes conclusive evidence that a bill was not passed in a constitutional manner the bill does not become a law." State v. City of Palmetto, 99 Fla. 401, 402, 126 So. 781.

In Horton v. Kyle, 81 Fla. 274, 88 So. 757, it was held: "Where only twenty-two days elapsed between the date of the proclamation of the Governor calling the Legislature in extra session and the date of its adjournment, there is no presumption that the constitutional 60 days notice required before a local or special bill can be passed was given, and where it is sought to pass a local or special Act at such extra session without establishing in the Legislature proof of the publication of the notice, such an Act is unconstitutional and void as not having passed the Legislature.".

This rule was followed in Williams v. Dormany, 99 Fla. 496, 126 So. 117, where it was alleged that "no notice was given of a bill passed at an extraordinary session of the

Legislature and it was not shown by the Journals of the Legislature or otherwise that the notice required by the Constitution was duly published and established in the Legislature. Nor was any such showing made in Horton v. Kyle, 81 Fla. 274, 88 So. R. 757." 100 Fla. 809, 811, 130 So. 444.

In State, *ex rel.* v. Blich, 100 Fla. 809, 130 So. 444, an Act passed at an extraordinary session of the Legislature in 1925, was held to have been enacted in compliance with Section 21, Article III, of the Constitution prior to its amendment in 1928, where "the Journal of the House of Representatives, at the Extraordinary Session of 1925, page 833, after recording the vote on the passage of the bill to establish a Criminal Court of Record in the County of Palm Beach, contains the following, which in this case imports verity:

" 'Evidence of the notice required by Section 21 of Article III of the Constitution of the State of Florida has been published in the locality where the matter or thing to be effected is situated, which notice stated the substance of the contemplated law, and was published at least sixty days prior to the introduction into the Legislature of the foregoing bill, and in the manner provided by law, was duly established in the House of Representatives before the foregoing entitled bill was passed.' "

In this case the Journal of each House of the Legislature after recording the passage of House Bill No. 116 (now Chapter 11425), being a "bill to be entitled An Act authorizing Bay County, Florida, to issue county bonds in the sum of one million dollars for the purpose of constructing paved, macadamized or other hard surfaced highways and the construction of bridges, providing for the employment of engineers to make surveys for said roads and bridges, to

prepare plans and specifications therefor, and the estimated costs thereof, and validating proceedings relating to said bonds," contains the following, which Journal entry imports verity:

"Evidence that the notice required by Section 21 of Article III of the Constitution of the State of Florida has been published in the locality where the matter or thing to be affected is situated, which notice stated the substance of the contemplated law, and was published at least sixty days prior to the introduction into the Legislature of the foregoing bill, and in the manner provided by law, was duly established in the House of Representatives before the foregoing entitled bill was passed." House Journal of 1925, pages 371-372, Senate Journal of 1925, page 276.

Where appropriate entries in the legislative Journals affirmatively show a legislative determination that the notice of intention to apply for the passage of a designated local or special bill, has been published as required by Section 21, Article III of the Constitution, prior to its amendment in 1928, and that evidence of such publication of notice was established in the Legislature before the passage of the local or special bill, such legislative Journal entries affirmatively showing such legislative determination are conclusive and cannot be averred against in pleadings or reviewed by the courts at least in the absence of a sufficient showing of fraud.

This rule is applicable to the passage of local or special bills at extraordinary sessions of the Legislature as well as at regular sessions.

In Horton v. Kyle, *supra,* and in Williams v. Dormany, *supra,* there were not sixty days between the calling of the extra session of the Legislature and the adjournment of the session, and it was alleged that the necessary notice was not

given. It was therefore presumed that the required sixty days notice was not given because of the lack of time, there being no showing by the legislative journals that the required notice was published.

It is always possible and practical for the required notice to be given by anticipating a call of an extra session of the Legislature and making the necessary publication to be prepared for a possible call of an extra session.

Original Section 21, Article III, Constitution, required sixty days publication of notice of a contemplated local or special law. In this case there were not sixty days between the date of the Executive call for the extraordinary session of the Legislature held in November, 1925, and the final adjournment of such extraordinary session; but the legislative journals affirmatively show a legislative determination that the required notice was published and that the evidence thereof was established in the Legislature before the passage of the bill which became Chapter 11425, Acts of 1925. This concludes the matter and the courts have no authority to disregard the legislative determination which is shown by the legislative journals. Statutory elections to fill vacancies in the legislative membership were officially ordered and advertised August 24-27, 1925, more than sixty days before the convening of the extra session. This furnished some notice of a probable extra session, and notices of contemplated local or special bills could reasonably have been published for sixty days under Section 21, Article III in anticipation of an extra session and before it convened November 17, 1925.

The legislative journals contain the Governor's proclamation dated November 2, 1925, calling the extraordinary session to convene November 17, 1925, the journal entries also showing the convening of the extra session November

17, 1925, and its final adjournment November 25, 1925. But such journal entries are not inconsistent with the journal entries stating that the Legislature had determined that the required sixty days notice of the proposed local law, now Chapter 11425, was duly advertised and evidence thereof established in the Legislature before the bill was passed, as required by Section 21, Article III, of the Constitution before its amendment in 1928.

It was entirely feasible for the sixty days notice to have been published in anticipation of the extra session and there are public records of the State with reference to calling special elections to fill vacancies in the membership of the Legislature which were made and published more than sixty days before the extra session was called, indicating that an extra session was probable. However, the Journal entries stating the legislative determination that the requirements of the Constitution had been complied with, import verity and are conclusive upon the courts in the premises.

The enactment of Chapter 11425 is authoritatively shown not to have violated Section 21, Article III, Constitution.

The opinion of the circuit judge, copied in the statement herewith, shows that he overruled the demurrer to the bill of complaint brought by a tax payer in the suit heretofore pending in that court, and enjoined the levy and collection of taxes to pay principal and interest of the bonds under Chapter 11425, Acts of 1925, because he held that statute to be inoperative on the ground that in its enactment Section 21 of Article III of the Constitution, as it was framed prior to its enactment in 1928, was not complied with, and that in consequence Chapter 11425 is not a law, and could not legally have been authority for issuing the bonds herein questioned. Doubtless the attention of the circuit court was not called to the statement contained in the legislative

journals, that the Legislature had determined that the required notice of the contemplated local law had been given and evidence thereof established in the Legislature as required by the Constitution.

. It appears from the foregoing discussion that the judgment and decision of the trial court are erroneous for the reason that the statute was in fact and in law duly and legally enacted, and authorized the bonds to be issued according to its terms and conditions.

This leads to the question as to whether the injunction granted by the circuit judge in another suit, in which suit no bond holder was a party, can prevent the enforcement of a peremptory writ of mandamus, if one should be issued herein commanding the county officers to levy the taxes that they have been enjoined by the circuit court from levying.

Where in a suit or action affecting the duties of public officers, a statute is held to be unconstitutional by the highest court of the State on the ground that the statute was not duly enacted; but the statute is subsequently adjudicated by the same court to have been duly enacted and constitutional, the statute is to be regarded as being constitutional from the date it became a law under Sections 18 and 28, Article III of the Constitution. See Christopher v. Mungen, 61 Fla. 513, 55 So. 273; 12 C. J. 801.

. When a legislative enactment involving official duties is held by the circuit court to be invalid because not legally enacted, and the same Act is afterwards in another suit held by the Supreme Court to have been legally enacted and valid, the Act is valid from its enactment, and the judgment of invalidity of the Act by the circuit court is inoperative against a mandate of the Supreme Court in the later case operating on the same parties with reference to the performance of their official duties under the statute. The suit

in the circuit court was by a tax payer to enjoin the officers from levying a tax to pay the bonds. This action is by bond holders to require the officers to levy the tax.

The decree of the circuit court referred to in the pleadings enjoined the levy of a tax to pay the same bonds that are involved here, upon the ground that Chapter 11425, Acts of the Extra Session of 1925, under which the bonds were issued, is unconstitutional, because it was not duly enacted in that notice of application for its passage was not published as required by Section 21 of Article II of the Constitution before its amendment in 1928, and such decree of injunction became *res adjudicata* when the time allowed by the statute for taking an appeal from the decree expired and none was taken. But such decree did not adjudicate the rights of bond holders, no bond holders being a party to the suit. When the Supreme Court in mandamus proceedings brought by bond holders, adjudicates the statute, Chapter 11425, to have been duly enacted notwithstanding the decree of the circuit court not appealed from, the mandate of the Supreme Court may be enforced as against the circuit court injunction. The decree of the circuit court was predicated upon the holding of the court in that case that Chapter 11425 was not legally enacted and its enforcement should be enjoined. This Court now holds Chapter 11425 to have been legally enacted, thereby adjudicating the Act to be valid and enforceable from its enactment; and the mandate of this Court to execute the provisions of the statute is operative notwithstanding the decree of the circuit court which enjoined the execution of the provisions of the statute. The rights of bond holders were not adjudicated in the injunction suit.

The alternative writ herein alleges: "That prior to the execution and delivery of said bonds described in Para-

graphs 2, 3, 4, and 5 hereof said bonds were duly validated by decree of the Circuit Court for Bay County, Florida, and a certificate to that effect was duly endorsed on each of said bonds by the Clerk of said Court under the seal of said Court."

The respondents deny that the validation proceedings had the effect of making legal and binding obligations of the bonds described in Paragraph 4 of the alternative writ of mandamus. This Court has held:

"Any matter or thing affecting the power or authority of the several political subdivisions mentioned in Sec. 3296, Revised General Statutes, 1920, to issue bonds, or the regularity or legality of their issue, including questions of both law and fact, in so far as those matters or things could be lawfully prescribed, regulated, limited or dispensed with by the Legislature in the first instance, or subsequently cured by a validating act, may be put in repose by a decree rendered pursuant to Sec. 3296, *et seq.*, Revised General Statutes, 1920. So also may constitutional rights or privileges which are designed *solely* for the protection of property rights of the individual concerned and which he may waive, or with reference to which he may estop himself, or as to which the Legislature may lawfully limit the period of time within which such right or privilege may be exercised." Charles Weinberger v. Board of Public Instruction, 93 Fla. 470, 471, 112 So. 253.

See also Charlotte Harbor Ry. v. Welles, 260 U. S. S. 11, 43 Sup. Ct. Rep. 3, 67 L. Ed. 100; Givens v. County of Hillsborough, *et al.,* 46 Fla. 502, 35 So. 88.

The decree of validation can be effective since Chapter 11425 is held to have been enacted in accordance with Section 21, Article III of the Constitution prior to its

amendment in 1928, and the bonds issued under the Act had a statutory basis for their issue.

For the respondents it is said that the amount of the ad valorem tax levy commanded by the alternative writ "will result in a complete breakdown of county government, and a virtual confiscation of property."

Without this expression, the members of the Court have a sympathetic appreciation of the gravity of the situation. But Section 4 of the Declaration of Rights of the Florida Constitution requires the courts to be open to those who have justiciable rights within the jurisdiction of the courts. Relators have contract rights with the respondent county acquired pursuant to the statutes of the State; and such statutes make it a mandatory duty of the respondent officers to impose the required tax to satisfy the statutory rights of the relators and the courts have only a judicial duty to perform. State *ex rel.* Dos Anigos, Inc., v. Lehman, *et al.,* 100 Fla. 1313, 131 So. 533; County Commissioners Columbia County v. King, 13 Fla. 451; Klemm v. Davenport, 100 Fla. 627, 129 So. 904. However, the rights of the relators and the corresponding duties of the respondents having been duly established in so far as such rights and duties are involved in this case, equitable considerations may be regarded in awarding the discretionary and extraordinary writ of mandamus, when the rights of the parties make it proper to do so and no provision or principle of law is thereby violated.

The statutory obligation of the county remains even though taxes to meet payments on the bonds are not levied annually as required by the statutes. The officials have failed to levy the required tax for several years and the relators have not promptly sought to enforce the statutory duty. Defaulted amounts have accumulated, the tax burden

in the county with a large bonded debt and a relatively small taxing source, is now unduly heavy. Taxes to pay interest for the years 1933 and 1934 may reasonably be levied. But levies for unpaid interest for prior years could reasonably be levied in part only during the present and succeeding years together with levies for current interest payments in each year. This would greatly relieve the present tax burden and would not jeopardize the relator's rights but might enable them to obtain larger payments during the years while the county is recovering from the general and unusual financial depression that now so seriously affects it in common with other communities that are even more favorably conditioned.

An appropriate final order will be made in due course.

Davis, C. J., and Ellis, Terrell, Brown and Buford, J. J., concur.

Ellis, J. (concurring).—I do not know just what form the appropriate final order will take, but I agree that the motion for a peremptory writ notwithstanding the answer should be denied.

The views expressed by the learned Circuit Judge, Honorable Ira A. Hutchinson, in the case of J. Van Wilhite v. Porter, et al., as members of the Board of County Commissioners of Bay County, contained in an opinion delivered by him in that case, and a copy of which is attached to the answer of respondents in this case, are, in my opinion, sound particularly as they relate to the alleged enactment by the Legislature of 1925 of House Bill No. 116, Chapter 11425, Acts of 1925, a special Act passed at an extraordinary session of the Legislature.

The decision in Horton v. Kyle, 81 Fla. 274, 86 South. Rep. 757, was followed in Williams v. Dormany, 99 Fla. 496, 126 South. Rep. 117, in which case the court held that

Chapter 11541, Laws of 1925, Special Session, came within the rule stated in Horton v. Kyle, *supra,* and was void. The Court speaking through Mr. Commissioner DAVIS said: the Act "never became effective because of non-compliance with constitutional requirements with reference to notice for the passage by the Legislature of local or special bills, Chapter 12864 (Laws 1927, Special Session) was, as stated in Horton v. Klye, *supra,* 'ineffectual to put life in the corpse.' "

In each case it was stated: "There was no way in which a member of the extra session or any one else in the State could have known that the Legislature would be called together in extra session prior to the Governor's proclamation." In the Dormany case, *supra,* the Court said: "The calling of the extraordinary session by the Governor was not known in time to make the required publication of the notice with reference to local or special laws before the approval of the Act in question."

The proclamation for the Special Session of 1925 was dated November 2nd; the session was convened on the 17th day of the same month, and adjourned on November 25th, 1925.

The Constitution provides that the Governor may convene the Legislature in extra session by his proclamation; that no special session convened by him shall exceed twenty days. Art. III, Sec. 2, Constitution 1885.

No special bill may be passed by the Legislature unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice must state the substance of the "contemplating law, and shall be published at least sixty days prior to the introduction into the Legislature of such bill, and in the manner to be provided by law. The evidence that such notice has been published shall be

established in the Legislature before such bill shall be passed." Art. III, Sec. 21, Constitution.

The above clauses of the Constitution were in force when Chapter 11425, *supra,* was attempted to be passed.

The amendment proposed in 1927 and adopted in 1928 prescribed the evidence by which a notice of intention to apply for special legislation should be established in the Legislature. That amendment was, of course, not in effect in 1925 when Chapter 11425, *supra,* was attempted to be passed. The evidence of a publication, however, was required by the Constitution to be established in the Legislature of 1925 when Chapter 11425, *supra,* was proposed. Under this clause, Article III, Section 2, Constitution, the Legislature was not required to cause to be entered upon its journals any affirmative showing that a notice of local or special bills had been properly published. See Rushton v. State, 58 Fla. 94, 50 South. Rep. 486.

The reason being that as members of the Legislature were under oath to support the Constitution and laws of the State they were presumed to have had the evidence of such publication established before attempting to pass the proposed special bill. A declaration on the journal affirmatively showing that a notice was published sixty days before the special bill was proposed adds no force to the presumption under the Constitution that the Legislature had observed the requirement. Such an entry is a mere declaration that the Legislature has observed the requirements of the Constitution, which under the Constitution it is presumed to observe.

In the case of State, *ex rel.* Bliss v. Blitch, 100 Fla. 809, 130 South. Rep. 444, the Court stated that the Act under consideration in that case was not in the class of laws enumerated in Section 20, Art. III, prohibiting the passage of special or local laws, which class under Section 21 "shall

be general and of uniform operation throughout the State." It was treated as a local law, although the establishment of a criminal court is a mere addition to the judicial system of the State which the Legislature "may from time to time ordain and establish." Art. V, Sec. 1, Constitution.

It is very doubtful whether a law establishing a criminal court is forbidden to be enacted without first establishing in the Legislature evidence of a notice of intention to apply for such law. The establishment of a court anywhere is a matter of general and public interest, a building of the State's judicial system, and the reason for a notice required in other special or local legislative proposals does not lie.

The evidence of notice in the instant case, as well as in the Blitch case, *supra*, is of no probative value further than a mere declaration that a notice was published. No facts are given as to when the notice was published, during what periods, and the place where and the means by which it was published.

The reason why the Governor by his proclamation calls an extra session within sixty days may be to obviate the possibility of necessity of considering special or local bills of the kind of which notice is required to be given. To hold that a person interested in special legislation may publish a notice at any time and await the calling of a special session, if by chance it may be called, or to publish a notice and then let it lie dormant during a general session to call it up at a special session that may thereafter be called is to defeat the purpose of the Constitution and refute the doctrine in Horton v. Kyle and Williams v. Dormany, *supra*.

So it is obvious that there must be some modification of the statement that a mere entry on the Legislative journal of the publication of a notice is sufficient evidence to satisfy the requirements of the Constitution.