PARKER, Judge.
SouthTrust Bank of Alabama, N.A., as Trustee, (SouthTrust) appeals from a final summary judgment which ordered the Palms of Terra Ceia Bay Community Development District (the District) to levy ad valorem taxes on property within the District in an amount equal to the total as *186 sessed value of the taxable property. We reverse.
On or about March 31, 1983, the District, pursuant to chapter 190, Florida Statutes, issued general obligation and special assessment capital improvement bonds in the principal amount of $11,500,000 for the development of two projects. The bonds have been in default since September 1987. SouthTrust, the trustee for the bondholders, accelerated all principal, interest, and other charges due on the bonds which resulted in over $14,000,000 being due to the bondholders.
This is the second time that these parties have appealed to this court respecting this matter. In 1989, SouthTrust filed an emergency petition for writ of mandamus in the Circuit Court for Manatee County to compel the District to “levy an ad valorem tax on properties located within the District in an amount sufficient to pay all principal and interest owing on the bonds.” The District opposed the petition. Southfield Farms Ltd., Ill (Southfield Farms), the current owner of certain property located within the District, intervened in the action, opposed the petition, and raised numerous affirmative defenses. The trial court denied the mandamus relief sought. This court reversed the trial court in South-Trust Bank of Alabama, National Association v. Palms of Terra Ceia Bay Community Development District, 560 So.2d 1205 (Fla. 2d DCA 1990) and noted that:
The levying of such taxes is mandatory, not discretionary. The resolution states that those taxes shall be levied after deduction of any other funds available from special assessments, and there is no question that no other such funds are available....
[[Image here]]
We also recognize the plight of the owners of property interests in the district against which high taxes are to be levied under the terms of the bond resolution .... However, those interests are subject to the bond resolution. It is most unfortunate that all concerned cannot financially benefit from the project, or at least avoid losses. But, again, it is the bondholders who invested their money in the project, whose bonds are not being paid, and to whom promises were made who are entitled to the relief requested.
SouthTrust Bank, 560 So.2d at 1206-07 (emphasis in original).
While the above case was pending in this court, Southfield Farms filed its complaint for declaratory relief in an attempt to limit the amount of the anticipated ad valorem tax on its property. Southfield Farms named the District as the only defendant. The complaint alleged, in part, that only thirty percent of the improvements to be constructed from the bond proceeds have been completed, that the bond proceeds have been depleted and that there is no further source of funds, that the District cannot levy an ad valorem tax in excess of thirty-five percent of the assessed value of the land, and that the property’s current value is only $1,800,00o.[1] The District filed its answer to the complaint, admitting most of the allegations contained in the complaint and alleging no affirmative defenses. Southfield Farms immediately moved for summary judgment and scheduled a hearing. Southfield Farms filed no affidavits, deposition transcripts, or other evidence in support of its motion for summary judgment.
SouthTrust filed a motion to intervene, which the trial court granted. SouthTrust filed its answer and affirmative defenses wherein it admitted most of the factual allegations surrounding this matter but denied the applicability of the thirty-five percent statutory cap. SouthTrust also filed an affidavit of its senior vice president in opposition to Southfield Farms’ motion for *187 summary judgment. The affiant stated that the District has lease payments from Southfield Farms as an additional source of funds to complete the infrastructure and improvements. The affiant further stated that the bond resolution empowered the District to levy an ad valorem tax which is unlimited in millage.
The trial court, following the hearing, entered a summary judgment which provided:
ORDERED AND ADJUDGED, that the Defendant, PALMS OF TERRA CEIA BAY COMMUNITY DEVELOPMENT DISTRICT, CITY OF PALMETTO, FLORIDA, shall make its ad valo-rem tax levy against the taxable property within its boundaries in an amount equal to the total assessed value of such property, said assessed value to be as determined by the Manatee County Property Appraiser’s Office.
IT IS FURTHER ORDERED AND ADJUDGED, that payment of this ad valorem tax by the Southfield Farms, Ltd., Ill extinguish any further or future ad valorem or special assessment tax[2] liability on the part of all landowners within the District arising from the Bond Resolution and Trust Indenture....
(Footnote added.)
Southfield Farms argues that section 190.016, Florida Statute (1987)[3] prevents the District from levying ad valorem taxes in excess of thirty-five percent of the assessed value of the taxable property in the District. Southfield Farms, however, agreed at the summary judgment hearing to pay the full value of the taxable property within the District. Hence, the trial judge’s order provided for an assessment at the assessed value of the taxable property, which was higher than the thirty-five percent figure.
We conclude that the trial judge’s order, as a matter of law, was error. We do not agree with Southfield Farms that the intent of section 190.016(9)(a), Florida Statutes (1987) was to encompass this set of facts. In our view, that subsection is to ensure that general obligation bonds, when issued, are not to exceed thirty-five percent of the taxable property’s assessed value. We find no language in Chapter 190 that permits a trial court to establish property values for ad valorem tax purposes at a subsequent time after the bonds are issued following a bond validation hearing. “A judgment of validation precludes a subsequent attack on a bond issue on the ground that the debt limit imposed by statute or charter provision was exceeded.” 42 Fla. Jur.2d Public Securities and Obligations § 121 (1983); see also Richard v. City of Fort Lauderdale, 146 Fla. 349, 1 So.2d 202 (1941) (en banc).
Southfield Farms advanced the argument based on equitable grounds that there will be no bids if SouthTrust can foreclose on property valued at $1,800,000 when the amount due the bondholders now exceeds $14,000,000. Although Southfield Farms concedes that Article VII, Section 9 of the Florida Constitution exempts limits upon ad valorem taxes assessed against taxable property in the Districts, Southfield Farms argues that these high taxes will destroy the District, its purpose, and prohibit any further development. Even if all that is true, the District came into existence by an act of the legislature followed *188 by a majority of the electors within the City of Palmetto approving the issuance of the bonds.[4] See Art. VII, § 9, Fla. Const. Early cases in Florida have concluded that a duty to levy taxes in sufficient amounts to pay bonds imposed a duty to pay the debts, with no limitation or latitude in the performance of that duty. State ex rel. Harrington v. City of Daytona Beach, 118 Fla. 773, 160 So. 501 (1935); State ex rel. Gillespie v. County of Bay, 112 Fla. 687, 151 So. 10 (1933); State ex rel. Dos Amigos, Inc. v. Lehman, 100 Fla. 1313, 131 So. 533 (1930). Further, Southfield Farms has less right to complain because it purchased the property in 1988, after the bond resolution had passed. It then leased property and contracted to complete the golf course and clubhouse. Southfield Farms’ purchase and lease all occurred while South-Trust’s foreclosure action was pending. Accordingly, we reverse the summary final judgment and remand with directions to the trial court to enter an order determining that the District is empowered to levy ad valorem taxes which are unlimited in millage.
RYDER, A.C.J., and FRANK, J., concur.

. The following can be gleaned from the hearings: The bonds were issued to construct streets, drainage, sewer and water lines, guard houses, pump and lift stations, a golf course irrigation system, a clubhouse, street lighting and other improvements. At the time of the hearing, the construction consisted of a half completed golf course, a partially completed clubhouse, and the shells of some buildings in which condominiums were to be completed. Federal indictments are pending against the original developer. The mayor of Palmetto described the development as a “five year ... eyesore on our community."

. A circuit judge struck the District’s earlier attempt to levy special assessments upon the owners of taxable property within the District, ruling that the assessments exceeded the value of the improvements on the land. That order was not appealed.

. That subsection provides, in part:
(9) GENERAL OBLIGATION BONDS.—
(a) The district shall have the power from time to time to issue general obligation bonds to finance or refinance capital projects or to refund outstanding bonds in an aggregate principal amount of bonds outstanding at any one time not in excess of 35 percent of the assessed value of the taxable property within the district as shown on the pertinent tax records at the time of the authorization of the general obligation bonds for which the full faith and credit of the district is pledged. Except for refunding bonds, no general obligation bonds shall be issued unless the bonds are issued to finance or refinance a capital project and the issuance has been approved at an election held in accordance with the requirements for such election as prescribed by the State Constitution.

. The bond resolution, by its terms, provided that it was null and void and of no effect if the electors disapproved the issuance of these bonds.