THE STATE OF FLORIDA, ON THE RELATION OF W. V. KNOTT, *Relator*, v. H. CLAY CRAWFORD, SECRETARY OF STATE, THOMAS F. WEST, ATTORNEY GENERAL, and J. C. LUNING, STATE TREASURER OF THE STATE OF FLORIDA, AS AND CONSTITUTING THE STATE CANVASSING BOARD OF PRIMARY ELECTIONS OF THE STATE OF FLORIDA, *Respondents*.

Opinion Filed Sept. 9, 1916.

1. The State Canvassing Board may by appropriate proceedings in mandamus be required to reconvene and to canvass amended and corrected returns of a primary election held pur-

suant to the statutes of the State, where the returns have been amended and corrected in judicial proceedings.

2. In response to a command in mandamus proceedings to reconvene and to canvass amended and corrected returns of a primary election, the State Canvassing Board may aver fraud in the amended and corrected returns when the members of such board were not parties to the judicial proceedings under which the amended and corrected returns were made.

3. The burden is upon the respondents to prove the affirmative averments in their answer of fraud in amended and corrected primary election returns they are commanded to canvass or to show cause for not so canvassing.

Original Proceedings by Mandamus.

Motion to strike denied; also Peremptory Writ denied.

*Thomas B. Adams* and *W. J. Oven,* for Relator;

*W. W. Flourney,* for Respondents.

PER CURIAM.—An alternative writ of mandamus was issued to the respondents in this case to forthwith assemble and proceed publicly to canvass certain amended and corrected returns of the Primary Election held on June 6th, 1916, as sent under the orders of court by certain County Canvassing Boards to the Secretary of State and Governor of the State in connection with the original returns sent to the said State officials by the County Canvassing Boards of the remaining counties in the State, and to speedily determine and declare who has been nominated as the Democratic nominee for the office of Governor as shown by such returns, or to show cause why they refuse to do so.

The alternative writ was based upon a petition which, among other things, alleged that the respondents as and constituting the State Canvassing Board of Primary Elections, met at Tallahassee, Florida, on June 26, 1916, and proceeded to canvass the returns from the various counties, then in possession of the respondents and ascertained therefrom that Sidney J. Catts received two hundred and sixty first and second choice votes more than the relator herein, who received the next highest number of first choice votes; that the returns which were thus canvassed by the respondents so far as the same pertained to the office of Governor from the counties of Bradford, DeSoto, Duval, Hamilton, Jackson, Leon, Madison, Nassau, Okaloosa, Orange, Polk, Putnam, Santa Rosa, St. Johns, St. Lucie, Sumter, Suwannee and Volusia were *erroneous* and *inaccurate* and did not show the true number of first and second choice votes as *actually* cast for the relator and the other candidates for the nomination by the Democratic party as its candidate for Governor of the State; that since the canvass was made by the respondents as aforesaid the said *erroneous* and *inaccurate* returns have been corrected as to the office of Governor by mandamus proceedings in proper courts, directed to inspectors of election and to the county canvassing boards of said counties; that the amended returns corrected as aforesaid and now containing a tabulation of the *true* number of first and second choice votes actually cast by the electors for the office of Governor have been sent in by the several County Canvassing Boards of said Counties to the Secretary of State and the Governor of said State; that said amended returns corrected as aforesaid taken in connection with the original returns from the remaining counties of said State show that the "Relator and the said Catts were the high men as regards the first

choice votes cast for the relator and the other candidates at said election, but that neither the relator nor the said Catts received a majority of such first choice votes; that the said amended and corrected returns taken in connection with the original returns from the remaining counties show that when the second choice votes cast for relator, by those electors voting first choice votes for Ion L. Farris, F. M. Hudson and F. A. Wood, the excluded candidates for the nomination for Governor, are added to the total number of first choice votes cast for the relator that the number of first and second choice votes so cast exceeds the number of first choice votes cast for the said Catts, together with all second choice votes cast for him by electors voting first choice votes for the said excluded candidates; that the relator had made a demand upon the respondents to assemble and make a recanvass of said returns, but they had refused to do so; that when the amended and corrected returns are duly canvassed by the respondents it will appear that the relator was duly nominated as the Democratic candidate for the office of Governor of the State of Florida at said Primary Election, etc.

To the alternative writ the respondents answered that they met as a canvassing board for primary elections, as required by Section 48 of Chapter 6469, Acts of 1913, Laws of Florida, in the office of the Secretary of State at Tallahassee, on the 26th day of June, 1916, and within the time prescribed by said statute for the purpose of canvassing the returns of the primary election held on June 6, 1916, and at said meeting did canvass the returns of said primary election from each county in the State, and included in the canvass the returns of the votes received by the "several candidates of the Democratic party for the nomination to the office of Governor," and upon the

completion of the said canvass declared the result as required by law and adjourned. "And they said that they should not be required to reassemble and recanvass said returns as amended, and, if required so to do, they should not be directed to include in such recanvass the returns of the counties of Madison and Hamilton, for the reasons hereinafter enumerated."

The answer then recites the reasons urged by the respondents why the "amended and corrected" returns from the counties of Madison and Hamilton should not be included in the order to recanvass the returns. Those reasons in substance are as follows:   As to Madison county, that "it appeared" from the affidavits of the inspectors and clerk conducting the said election in Precincts numbered 5, 6 and 3, and from the affidavit of one of the inspectors and clerk conducting the said election in Precinct Number 2 in said county, then on file in the office of the Secretary of State, that between the date when the ballots cast in said primary election at said precincts were originally counted immediately after the polls were closed on June 6, 1916, and the date upon which said ballots were recounted, on the 5th day of July, 1916, "by said *inspectors* and *clerk under direction* of an *order* of the *court,* said ballots were tampered with and changed, and that the ballots counted on the latter date were marked differently from the ballots actually voted by the voters at said precinct in the primary election and counted by said inspectors and delivered by them in the ballot box to the Supervisor of Registration as required by law, and that there was a difference in the result of said counts; that the first count, tally and return of said votes were true and the last count, tally and return of said votes after said changes were made, because of such changes were incorrect, and that the difference between the orig-

inal and amended returns from the said county is due largely if not entirely to said changes made in said ballots in said precincts."

The respondents do not rest their refusal to comply with the order of the alternative writ upon the affidavits of the inspectors and clerks of the primary election at the precincts named, who were proper parties defendant in the court proceedings which resulted in the order to the inspectors to recount the ballots and make correct returns thereof, and who doubtless were made parties defendant and had ample opportunity to make the defense outlined in said affidavits and prove the truthfulness of their assertions, and who are bound by the judgment and order of the court in the proceedings to which they were parties. But the respondents go further "and aver the truth to be that said ballots were unlawfully tampered with and changed prior to the time when the last count was made, and that the said count does not give the true result of said election in said" precincts. The respondents who, it does not appear, were parties defendant in the judicial proceedings resulting in an order to recount the ballots and make a correct return thereof, and who are therefore not bound by such judgments and orders of the Circuit Courts, availed themselves of their privilege to question the integrity of the amended returns made pursuant to a judicial writ and injected into these proceedings for the first time a charge of fraud.

Practically the same averments were made as to the amended returns from Precincts numbered 3 and 7 in Hamilton County.

The answer avers that the "charges cannot be ignored by this board because they not only question the integrity of the election" in said precincts and counties, "but such conduct challenges the right of the members of a political

party in this State to freely select the candidates of such party by popular vote." The answer also avers that if the amended returns from Madison and Hamilton counties are excluded a recanvass of all the returns would produce no change in the result as theretofore declared. This averment is supported by an exhibit which shows that the respondents had examined and recanvassed the original and amended returns and ascertained the result to be as averred.

The relator moved to strike from the answer of respondent's paragraphs two and three which contained the references to the affidavits referred to and the respondents' own averments of fraud upon the grounds: First, that the averments contained in the paragraphs were scandalous and impertinent; second, because the averments were based upon information and belief so far as the respondents are concerned; third, because it was not competent for the respondents to rely upon ex parte affidavits of the inspectors as an excuse for refusing to canvass the entire amended returns from the two counties, and as to Madison county that such affidavits should not be considered to nullify the certificates of the inspectors to the amended returns from said precincts duly filed with the County Canvassing Board of Madison county in compliance with a judicial writ.

A motion was also made by the relator for a peremptory writ embracing substantially the same grounds as stated in the motion to strike the named paragraphs of the answer, and upon the further grounds that no showing had been made to advise the court why the peremptory writ should not be issued; that the answer was insufficient, vague, indefinite, uncertain and evasive; that the answer does not sufficiently deny or confess and avoid the

material allegations of the alternative writ, and that the answer does not make it to appear that the relator is not entitled to a full and complete performance by the respondents of the acts required of them to be performed by the alternative writ.

There are two questions presented by the pleadings in this proceeding: First, has the State Canvassing Board of Primary Elections, by convening on June 26, 1916, and canvassing the returns of the election as made by the different County Canvassing Boards and declaring the result and adjourning become thereby *functus officio*, and may not therefore be required to reconvene for the purpose of recanvassing returns which are shown to have been erroneous and which have been corrected under judicial proceedings? Second, may the respondents, if they are required by law to make such recanvass of returns which originally were erroneous but by judicial procedure were amended and corrected, urge as a valid reason for refusing to make such recanvass that the orders of the court directing a recount of the ballots and a correction of the returns in proceedings to which respondents were not parties, are based on a fraud in that notwithstanding "said ballots were unlawfully tampered with and changed prior to the time when the last count was made," the recount was made under the Circuit Court's order?

There is no merit in the first proposition. It is useless to repeat here the reasons given by this court in other cases involving the same principle. In the case of Drew v. State Canvassing Board, 16 Fla. 17, the Secretary of State, Attorney General and Comptroller were required to "meet, canvass and reassemble" as a Board of State Canvassers. In Schneider v. Lang, 66 Fla. 492, 63

South. Rep. 913, it was said that "It was and is a continuing duty of the inspectors and clerks who conduct the election to make a proper return of the result of the election. A similar duty rests upon the county board of public instruction to canvass the returns of election as made to it by inspectors and clerks of election and declare the result." In that case an election was held to establish a Special Tax School District, but the duties of the County Board of Public Instruction as to the canvass of the election returns were simply those of a County Canvassing Board under the Primary Election Law, viz: purely ministerial. The duties of a State Canvassing Board of Primary Elections are also ministerial. Under the Primary Election Law of this State the vote actually cast determines the rights of the candidates. If the vote actually cast is through error or fraud, by accident or design incorrectly returned so that a candidate may be deprived of his rights it is difficult to understand how it can reasonably be urged that no power exists to correct the error. In the case of D'Alemberte v. State ex rel. Mays, 56 Fla. 162, 47 South. Rep. 489, this court said that the courts would enforce the rights of a candidate arising under the primary election laws, and in the recent case decided at this term, State ex rel. Knott v. E. E. Haskell et al., the court said there is abundant authority both in this State and other States asserting the power of the court to compel by mandamus the reconvening of a board of canvassers and a recanvass of the vote. There is no difference in principle between the duties of a State Canvassing Board and a County Canvassing Board of Primary Elections. The one declares from the returns who may have been nominated for State offices and the other declares from

the returns who may have been nominated for county offices.

The second proposition, however, is one in which we think there is merit. The respondents in their own behalf, upon their own and sole responsibility aver "that the ballots were unlawfully tampered with and changed prior to the time when the last count was made and that said count does not give the true result of said election" in said precincts. The "last count" was made under order of the Circuit Court. In its last analysis the averment is nothing less than an imputation of fraud upon the Circuit Court's order, and a challenge as to its good faith. A charge so grave emanating from a source so high as three Cabinet Officers of the State Government cannot be ignored. It presents an issue as to the correctness of the amended returns as certified to the Secretary of State and the Governor under the order of the court. In the case of State *ex rel.* Knott v. Haskell, *supra,* the court said that "the intention of the lawmakers being apparent from the language used to secure a fair primary election and a correct and honest count of the votes by the inspectors, the court will not adopt a construction that will defeat such purpose, but will upon a proper application by the use of such writs as are at its command require the primary election officers to make their returns speak the truth if the records, ballots and poll lists have been securely and safely kept by the proper officers as the law directs. Of course if this has not been done, and the ballot boxes, poll lists, ballots and records have been tampered with, or bear evidence of having been changed so that the truth cannot be ascertained from the records which the law commands the Supervisor of Registration to safely keep, then manifestly the purpose of the act is

defeated, the will of the people as expressed in the stat-
ute cannot be carried out, and the peremptory writ will
be denied."

The contention of counsel for relator that the ques-
tion cannot be raised in this proceeding because the judg-
ment of the Circuit Court making the order under which
the original returns were amended is *res adjudicata* is not
sound as to these respondents who were not parties to that
proceeding. They alone could inject the question of
fraud in this proceeding and upon their own responsi-
bility they have presented the issue, which is not aided in
any degree by the affidavits filed as exhibits to their an-
swer and which have no proper place in that pleading. It
is true that so far as the Inspectors and Clerks of the elec-
tion at the precincts named are concerned they are es-
topped by the court's order in the proceedings to which
they were parties from raising the issue at this late day,
they would be estopped from impugning the integrity of
their own certificates to the amended returns, because the
defense interposed here was available to them in the Cir-
cuit Court. The obligation resting upon them under the
law to correctly perform their duty would have impelled
them it would seem to make the defense at the proper time
and not seek at this late date to attack the correctness of
the court's order and the honesty of their own certificates.
The law of estoppel would prevent them and public policy
preclude such a course. The respondents, however, are
not bound by the court's order. They may make the de-
fense. They are defendants in a new proceeding involv-
ing the performance of a public duty and have a right to
question the validity of the amended returns made under
a court's order upon the ground of fraud. The issue will

have to be met.   The burden will be upon respondents to prove their averments of fraud.

The motion to strike parts of the answer is denied. So also is the motion for a peremptory writ denied.   The relator is given until Tuesday, the 12th instant, to join issue upon the averment of fraud.

TAYLOR, C. J., and COCKRELL, WHITFIELD and ELLIS, JJ., concur.

SHACKLEFORD, J., absent.

Issue was joined on the answer of the respondents and testimony was taken before the court.   During the progress of the hearing counsel for the respondents announced that upon the evidence adduced for the respondents, rested their case.   Whereupon the court stated that it was of the opinion that as to Hamilton County no *prima facie* case of fraud had been made under the averments of the answer; but that as to Madison County the relator may offer rebutting testimony.   Counsel for the relator asked leave to amend the writ by excluding Madison County, which was granted, and Madison County was eliminated from the proceedings on motion of the relator.

Thereupon it appearing that on the evidence under the alternative writ as amended, the relator was entitled to a peremptory writ, which was awarded.