STATE, *ex rel.* J. E. PEACOCK, v. E. A. LATHAM, *et al.,* as Members of and constituting the Board of County Commissioners of Volusia County, Florida.

Division. B.
Opinion Filed October 28, 1936.

*Scarlett & Futch, Stewart & Stewart,* and *Horn & Ossinsky,* for Relator;

*Hull, Landis & Whitehair, Erskine W. Landis, Francis P. Whitehair, Frank D. Upchurch* and *Fred R. Wilson,* for Respondents.

BUFORD, J.—In an original proceeding in mandamus the relator seeks to make effective the result and judgment obtained in the case of J. E. Peacock v. Latham, *et al.,* in which opinions were filed on October 14th and October 22nd, 1936, respectively, by coercing the County Commissioners of Volusia County, Florida, to print official ballots to be used at the general election to be held on November 3, 1936, without the name of Thomas N. Tappy appearing thereon as candidate for the office of County Judge of Volusia County, Florida, and with the name of J. E. Peacock appearing thereon as the candidate nominated by the Democratic Party at the Primary Election of June 2, 1936, as its candidate for the office of County Judge.

The record before this Court shows that Thomas N. Tappy was not nominated in the Primary of June 2, 1936; that he and Peacock were the only Democratic candidates for the office involved in that Primary and that Peacock in truth and in fact received 156 more votes for the Democratic nomination in that Primary than did Tappy.

The record further shows that in at least four precincts in that Primary Election a great number of votes cast for Peacock were deliberately and designedly called and, therefore, counted for Tappy when the election officials at those several precincts called, counted and tallied the votes, and that false returns were made to the Canvassing Board showing a larger number of votes cast for Tappy than were

actually cast for him and thereby causing the returns of said election as made by the Canvassing Board to show the nomination of Tappy instead of the nomination of Peacock. Recount and recanvass have been had under the orders of this Court in Mandamus and it has been determined that Peacock is under the statutes the nominee and that Tappy has not been nominated as the Democratic candidate for the office of County Judge of Volusia County, Florida.

Tappy claims the right to have his name printed on the general election ballot only as a result of the Primary Election of June 2, 1936.

Peacock claims the right to have his name printed on such ballot as the nominee of the Democratic Party in the Primary of June 2, 1936.

Section 256 R. G. S., 312 C. G. L., as amended by Section 1 of Chapter 14657, Acts of 1931, provides in part as follows:

"The Board of County Commissioners of each County shall cause to be printed on the ballots to be used in their respective counties, only the names of the candidates who have been put in nomination by primary election, or the appropriate executive committee, of any political party in this State, when the same have been certified and filed with them not more than sixty days nor less than twenty days previous to the day of election, which certificate shall contain the name of each person so nominated and the office for which he is nominated, and shall be signed and sworn to by the members, or a majority thereof, of the appropriate Canvassing Board of primary elections, or, in case of a nomination by an executive committee by the chairman and secretary thereof, provided that all committee nominations shall be made as provided by the laws governing primary elections."

In State, *ex rel.* Landis, v. Thursby, 107 Fla. 171, 144 Sou. 309, we had the above statute under consideration and it is contended that what we said in that case precludes the Board of County Commissioners from now reprinting ballots with the name of J. E. Peacock thereon as the Democratic nominee for the office of County Judge of Volusia County. In the main opinion concurred in by all members of the Court in that case we said:

"The record shows that the name of Dawson Brown, Jr., was the only name that had been certified to the Board of County Commissioners as a nominee or candidate for the office of County Commissioner from County Commissioners' District No. 3 of Volusia County not more than sixty days nor less than twenty days previous to the day of election.

"The record shows that the first certificate, demand or effort presented to the Board of County Commissioners of Volusia County seeking to get the name of Milton Jones printed on the General Election ballots to be used in the General Election on November 8th, 1932, as the nominee of the Republican Party, was presented on October 22nd, 1932. That no action had theretofore been taken or pursued to accomplish this end. And the record further shows that the nomination, if any was made, by which Milton Jones became the nominee of the Republican Party did not occur until within twenty days of the date of the General Election.

"Under this state of facts it is the statutory duty of the Board of Couny Commissioners to cause the ballots to be used in the General Election in Volusia County to be held on November 8th, 1932, to be printed with only the name of Dawson Brown, Jr., printed thereon as a candidate for the office of County Commissioner for County Commissioners' District No. 3 of said county. See Section 1, Chapter 14657, Acts of 1931."

In the concurring opinion in that case which was agreed to by Justice Terrell, Mr. Justice Davis said:

"Section 1 of Chapter 14657, Acts of 1931, is mandatory in its requirement that certificates of nomination, whether by primary or committee, must be filed with the Board of County Commissioners not less than twenty days before the General Election. The reason for this is obvious, since the ballot must be made up and printed in time for absentee voting to start fifteen days before the election. The record in this case shows that the respondent Board of County Commissioners so construed the law by making up the ticket in the first instance to contain only the nominees who had been certified within the legal time limit. The change that was made in making up the ballot, admittedly ocurred after the twenty day limitation had expired and after the County Commissioners had once fully discharged their functions in making up the ballots on the basis of the record as it stood on the day the twenty days ran out.

"This Court has recently held that when invoked before an election is held, all provisions of the election law are to be regarded as mandatory and are to be regarded as enforceable by mandamus and otherwise at the instance of any individual elector, as well as the public officials, such as the Attorney General, who are charged with enforcement of these laws. See McGregor v. Burnett, 141 Sou. Rep. 599."

In that case we issued our peremptory writ on the third day of November, 1932, commanding the respondents "to forthwith meet together and assemble and convene as the Board of County Commissioners of Volusia County, Florida, and thereupon immediately cause to be printed on the official ballots to be used in Volusia County, Florida, at the General Election to be held on November 8th, A. D. 1932,

only the name of Dawson Brown, Jr., as a candidate for the office of County Commissioner from District No. 3, Volusia County, Florida, and to cause the said official ballots to be printed so that the name of Milton Jones will not appear or be printed thereon as a candidate for the office of County Commissioner from District No. 3, Volusia County, Florida, and to do and perform all other things incidental in carrying out and accomplishing the primary purpose of this writ."

We thereby definitely adjudicated that ballots bearing a name printed thereon without authority of law should be reprinted with that name eliminated.

The opinion in the case of State, *ex rel.,* v. Thursby, *supra,* must be read and construed in the light of the factual conditions surrounding that case. There was no contest between persons both claiming the nomination from the same source. The record there showed that the nominee of the Democratic Party named in the Primary had died and thereupon the County Democratic Executive Committee convened and nominated Brown and his name was certified as such nominee to the Board of County Commissioners. After the expiration of the time for making nominations had occurred the Republican County Executive Committee convened and nominated Milton Jones as Republican candidate for the same office for which Brown had been named as the Democratic candidate. The County Commissioners had the ballots printed for the General Election with both names on the ballot. Now, if the Republican County Executive Committee had convened in due time and had nominated Jones as the Republican candidate for the office involved and the officers of that committee had arbitrarily failed and refused to certify the name of Jones to the County Commissioners, certainly they could have been required to·

so certify that name by mandamus and if pending the mandamus suit time had elapsed so as to bring the termination of that suit within twenty days of the Primary Election, we would not have been justified in holding that Jones was not entitled to have his name printed on the ballot.

It will be observed that in the opinion in that case we said:

"The record shows that the first certificate, demand or effort presented to the Board of County Commissioners of Volusia County seeking to get the name of Milton Jones printed on the General Election Ballots to be used in the General Election on November 8th, 1932, as the nominee of the Republican Party, was presented on October 22nd, 1932. That no action had theretofore been taken or pursued to accomplish this end."

This case differs materially from that one. Here the Primary Election had been held in due course. As the record shows here, Peacock received the majority of the votes cast for the nomination to be a candidate of the Democratic Party in the ensuing General Election for the office of County Judge, but some election officials failed to properly count and return the ballot cast and by their returns made it to appear that Mr. Thomas N. Tappy was the nominee as the candidate of the Democratic Party to be voted for in the General Election of November for the office of County Judge of Volusia County. Peacock promptly instituted mandamus proceedings to require a recount of the votes cast in certain precincts and recanvass of the result of the election, including the returns resulting from the recount. The recount and the recanvass was had under the order of this Court resulting as hereinabove stated. And so, unlike the conditions in the case of State, *ex rel.* Landis, v. Thursby, action had theretofore, that is before

the expiration of the time in which certificates were required to be filed with the County Commissioners, been taken and pursued to accomplish that very purpose.

It is contended in this case that although following the principle applied in Landis v. Thursby, the County Commissioners may be compelled to reprint the ballots eliminating the name of Thomas N. Tappy therefrom, that they cannot be required to print thereon the name of J. E. Peacock as the nominee of the Democratic Party, because Peacock did not receive a certificate of nomination on or before the 20th day preceding the date of the General Election. We cannot agree with this contention. The statute involved here must be considered in *paria materia* with other statutes governing the holding of Primary Elections, the count, tally and return of ballots and the canvass of the results and bearing in mind that the provisions of this statute contemplate the faithful observance of those statutes prescribing the duties of election officials.

A deviation from the proper performance of the duties of the election officials, as in this case, may so frustrate the contemplated orderly procedure as to make inapplicable provisions of this statute which would otherwise be held to be mandatory.

There is no basis in the record for any suspicion that Thomas N. Tappy, or anyone authorized by him to act in his behalf, was directly or indirectly responsible for fraud shown to have been committed in connection with the count, tally and return of ballots herein referred to. But the courts should not permit him to benefit by the fraud to the injury of him whom the record shows to have been the intended victim of that fraud. To do so when the Court has power to eliminate the intended effect of the fraud

would be to sanction the fraud committed and encourage repetitions of like conduct in the future.

The nomination of Peacock occurred at the Primary Election on June 2, 1936. Upon a proper and true count, return and canvass of that election he was then entitled to a certificate of nomination. The right to that certificate existed at all times since then but the evidence of the right was adduced at a later date and as soon as the evidence was adduced and the certificate made thereon the demand was made on the County Commissioners to print the ballot for the General Election without the name of Thomas N. Tappy thereon and with the name of J. E. Peacock thereon.

In the case of State, *ex rel.* Knott v. Crawford, 72 Fla. 232, 73 Sou. 584, we said:

"There are two questions presented by the pleadings in this proceeding: First, has the State Canvassing Board of Primary Elections, by convening on June 26, 1916, and canvassing the returns of the election as made by the different County Canvassing Boards and declaring the result and adjourning become thereby *functus officio,* and may not therefore be required to reconvene for the purpose of recanvassing returns which are shown to have been erroneous and which have been corrected under judicial proceedings? Second, may the respondents, if they are required by law to make such recanvass of returns which originally were erroneous but by judicial procedure were amended and corrected, urge as a valid reason for refusing to make such recanvass that the orders of the court directing a recount of the ballots and a correction of the returns in proceedings to which respondents were not parties, are based on a fraud in that notwithstanding 'said ballots were unlawfully tampered with and changed prior to the time

when the last count was made,' the recount was made under the Circuit Court's order?"

"There is no merit in the first proposition. It is useless to repeat here the reasons given by this court in other cases involving the same principle. In the case of Drew v. State Canvassing Board, 16 Fla. 17, the Secretary of State, Attorney General and Comptroller were required to 'meet, canvass and reassemble' as a Board of State Canvassers. In Schneider v. Lang, 66 Fla. 492, 63 South. Rep. 913, it was said that 'It was and is a continuing duty of the inspectors and clerks who conduct the election to make a proper return of the result of the election. A similar duty rests upon the county board of public instruction to canvass the returns of election as made to it by inspectors and clerks of election and declare the result.' In that case an election was held to establish a Special Tax School District, but the duties of the County Board of Public Instruction as to the canvass of the election returns were simply those of a county canvassing Board under the Primary Election Law, viz.: purely ministerial. The duties of a State Canvassing Board of Primary Elections are also ministerial. Under the Primary Election Law of this State the vote actually cast determines the rights of the candidates. If the vote actually cast is through error or fraud, by accident or design incorrectly returned so that a candidate may be deprived of his rights it is difficult to understand how it can reasonably be urged that no power exists to correct the error. In the case of D'Alemberte v. State, *ex rel.* Mays, 56 Fla. 162, 47 South. Rep. 489, this court said that the courts would enforce the rights of a candidate arising under the primary election laws, and in the recent case decided at this term, State, *ex rel.* Knott, v. E. E. Haskell, *et al.,* the court said there is abundant authority both in this State and other

states asserting the power of the court to compel by mandamus the reconvening of a board of canvassers and a re-canvass of the vote. There is no difference in principle between the duties of a State Canvassing Board and a County Canvassing Board of Primary Elections. The one declares from the returns who may have been nominated for State offices and the other declares from the returns who may have been nominated for county offices."

And so in this case we apply the enunciation above quoted that "under the primary election laws of this State the vote actually cast determines the right of the candidates. If the vote actually cast is through error or fraud, by accident or design, incorrectly returned so that a candidate may be deprived of his rights it is difficult to understand how it can reasonably be urged that no power exists to correct the error." We hold that the power does exist to correct the error and that as ballots have not been printed bearing the name of J. E. Peacock as the candidate of the Democratic Party nominated in the Primary Election of June 2nd, 1936, for the office of County Judge, a continuing duty rests upon the Board of County Commissioners which can only be discharged by causing to be printed ballots with Peacock's name as such nominee thereon.

In the case of State, *ex rel*. Knott, v. Haskell, *et al.*, 72 Fla. 176, 72 Sou. 651, we said:

"The power which the Court exercises by the writ of mandamus to compel a public officer to correctly perform the ministerial duties pertaining to his office and which by law he is required to perform is independent of the statute; it rests in the sovereign power of the state and is confided to the judicial branch of the government."

In McConihe, Mayor of Jacksonville, *et al.*, v. State, *ex rel*. McMurray, et al., 17 Fla. 238, in an opinion by Mr.

Justice WESTCOTT which involved the power of the Court to order an election to be held after the time prescribed by law for the holding of the election had passed, this Court said:

"Nor is it any objection that the precise date at which the election was to be held has passed. 4 East, 142; 29 Maryland 523.

"Such a doctrine would practically abolish the remedy by mandamus in such cases. The writ does not lie before, but only after default in the performance of a ministerial duty (Tap. Man., 290 8 A. and E. 911), and if it be a good defense to allege that the time fixed for its performance has passed, it is evident that the very ground upon which you must base your application for the writ becomes a sufficient reply to the alternative writ when granted."

It is too well settled to require the citation of authorities that when the statute requires the performance of an official duty the right to have that duty performed continues as long as the official upon which it devolves fails and refuses to perform the same. Upon that theory of law, the precinct election inspectors and clerks were required to recount and make correct return of the votes cast for candidates for the office of County Judge at the election on June 2, 1936. Upon the same theory, the Canvassing Board of Volusia County was required to recanvass the returns, including the returns of the recount, and to make certificate of the result of that recanvass, and upon the same theory the alternative writ of mandamus was issued to the Board of County Commissioners to reprint the ballots when it was made to appear that they had already caused to be printed certain ballots which they proposed to use in the General Election.

It is contended by the respondents that ballots to be used in the General Election cannot be now reprinted because the election has already begun by the casting of absentee ballots.

This contention is not tenable. The Constitution provides that the General Election shall be held on the first Tuesday after the first Monday in November and not at any other time. No ballots have been cast nor will be cast by absentee voters until the date arrives. The law has merely provided for the accommodation of those who will not be present at their respective election precincts on that day that they may prepare a ballot which will be cast for them on that day, but if a person preparing such a ballot and depositing it to be cast as the law directs should die before election day, the authority vested in the County Judge to cast that ballot for such elector will cease to exist and so also if after preparing such a ballot to be cast in the General Election that proposed elector should be convicted of a felony his right to suffrage will cease and his ballot cannot lawfully be cast. There is nothing to prevent any who may have taken advantage of this liberal statute and prepared those ballots which are not to be used in the General Election from procuring a proper ballot when the same shall have been printed and made available for that purpose. The inconvenience that may be caused by this is not comparable to the right acquired by a nominee to have his name printed on the official ballot.

It is further contended that the County Commissioners may not now be required by mandamus to perform their duty in this regard because a Circuit Judge has issued a restraining order restraining the Board of County Commissioners from reprinting the official ballots to be used at the General Election in Volusia County in 1936.

The record shows that this restraining order was obtained by Mr. Thomas N. Tappy and others and was obtained by him after he had petitioned this Court and had been permitted to come in and participate in the mandamus

proceedings leading up to this final disposition. He knew, or should have known, that such procedure could have no effect upon the powers of this Court. Such question was definitely determined by this Court in the case of State, *ex rel.* Gillespie, v. County of Bay, *et al.*, 112 Fla. 687, 151 Sou. 10, wherein a Circuit Judge had enjoined the Board of County Commissioners of Bay County from levying certain taxes and we held that the peremptory writ of mandamus would supersede and override the restraining order issued by the Circuit Judge, using the following language:

"The decree of the circuit court referred to in the pleadings enjoined the levy of a tax to pay the same bonds that are involved here, upon the ground that Chapter 11,425, Acts of the Extra Session of 1925, under which the bonds were issued, is unconstitutional, because it was not duly enacted in that notice of application for its passage was not published as required by Section 21 of Article II of the Constitution before its amendment in 1928, and such decree of injunction became *res adjudicata* when the time allowed by the statute for taking an appeal from the decree expired and none was taken. But such decree did not adjudicate the rights of bondholders, no bondholders being a party to the suit. When the Supreme Court in mandamus proceedings brought by bondholders, adjudicates the statute, Chapter 11425, to have been duly enacted notwithstanding the decree of the Circuit Court not appealed from, the mandate of the Supreme Court may be enforced as against the circuit court injunction. The decree of the circuit court was predicated upon the holding of the court in that case that Chapter 11425 was not legally enacted and its enforcement should be enjoined. This Court now holds Chapter 11425 to have been legally enacted, thereby adjudicating the Act to be valid and enforceable from its enactment; and the.

mandate of this Court to execute the provisions of the statute is operative notwithstanding the decree of the circuit court which enjoined the execution of the provisions of the statute."

It is contended that because there is a contest suit pending in the Circuit Court of Volusia County involving the nomination of the Democratic candidate for County Judge, this Court is without power to issue its peremptory writ of mandamus following the alternative writ in this case. We can not agree that the power of this Court to proceed to final judgment and to make effective the results of its former judgments may be frustrated by the mere pendency of a suit in the Circuit Court. The result of that suit, should it be terminated, might constitute basis for further litigation in this Court with consequent judgments therein, but that is a condition not yet apparent and as to which we express no opinion.

For the reason stated the peremptory writ should issue returnable to October 31st, 1936, at 10 o'clock A. M.

Delivery of the peremptory writ of mandamus to counsel of record for the respondents shall constitute sufficient service thereof on the respondents.

It is so ordered:

WHITFIELD, C. J., and TERRELL, BROWN, and DAVIS, J. J., concur.

ELLIS, P, J., dissents.

DAVIS, J. (concurring).—The record shows that the right of Tappy, as putative nominee of the Democratic Party for County Judge, to have his name remain on the general election ballot, ceased and expired by virtue of the recount and recanvass of the votes had under the direction of, and by the judgment of, this Court. Therefore there is no lawful ground under any circumstances which would war-

rant this Court in refusing to grant so much of the peremptory writ of mandamus as seeks to have removed Tappy's name from the general election ballots after the recount and recanvass of the votes carried out under judgment of this Court has shown him no longer entitled, as a matter of law, to enjoy a right derived solely from the original canvass that had ceased to exist by force and effect of the judgment of this Court in the recount and recanvass proceedings.

Whether or not circumstances exist in favor of the putative nominee Tappy that will entitle *him*, on application to this Court, to have the peremptory writ of mandamus stayed upon equitable principles insofar as it requires his opponent Peacock's name to be printed on the ballot, is a matter that cannot be decided at the present stage of this case, for the reason, if no other, that *Tappy alone* can invoke the discretion of the Court to that effect. The peremptory writ of mandamus therefore should issue in manner, substance and form as prayed, insofar as the respondent County Commissioners are concerned. This is so because the respondent County Commissioners are not entitled to invoke for and upon behalf of putative nominee Tappy, equitable grounds, if any there be, that may exist to entitle Tappy to now appear and pray that this Court interpose in his behalf its inherent equitable power to stay its process of mandamus insofar as it requires his opponent's name to be printed on the ballot at this late hour in proceedings to which said Tappy is not a nominal party of record. I reserve judgment on the last stated proposition.

WHITFIELD, C. J., and BUFORD, J., concur.